Howard N. SCHEUER, Plaintiff,

v.

CENTRAL STATES PENSION FUND, a Foreign Corporation, Defendant.

Civ. A. No. 69–C–636.

United States District Court,
E. D. Wisconsin.

May 30, 1975.

Sydney M. Eisenberg, Milwaukee, Wis., for plaintiff.

Alan M. Levy, Milwaukee, Wis., for defendant.

REYNOLDS, Chief Judge.

In this action plaintiff, a member of the teamsters union for over thirty years, seeks pension benefits from the defendant pension fund. The fund has denied his application for benefits on the ground that he was self-employed between 1956 and 1965, that this constituted a break in service resulting in the loss of all service credit for work performed prior to the break, and that as a result plaintiff has failed to accumulate the twenty years of service required for benefit eligibility. Plaintiff has contended that there was no break in service, and that even if there were, the fund is estopped from denying his eligibility because he was assured he would be eligible and has relied on that assurance to his detriment.

In a prior decision in this action, the fund's motion for summary judgment was denied. Scheuer v. Central States Pension Fund, 358 F.Supp. 1332 (E.D. Wis.1973). Subsequently, the parties agreed to waive trial by jury and to submit the case on stipulated facts to the Court for decision.

For the reasons hereinafter given, the Court finds that plaintiff was entitled to pension benefits upon his application for them in July 1968.[1]

## I.

With a single exception, the facts are not in dispute. Plaintiff joined the teamsters union in 1937 as a truck driver. Initially he was a member of Local 619, but in 1942 he transferred to Local 563 and in 1965 to Local 200 in Milwaukee.

Since 1949, plaintiff has engaged in hauling groceries and produce on a regular basis for the E. R. Godfrey Company ("Godfrey") of Milwaukee. He has primarily driven the company trucks and trailers, and has been paid by the mile for this driving and by the hour for loading, unloading, and other personal services. Throughout this period he has also owned his own tractor and has been paid by the mile for its use.

In 1956 Ball Motor Service, Inc., assumed responsibility for hauling Godfrey's products. There was no substantial change in the conditions of plaintiff's employment. On paper, however, there was a drastic change in plaintiff's status. Previously he had been treated as an employee of Godfrey. Robert Ball, the head of Ball Motor Service, Inc., requested plaintiff to enter into a lease of his tractor to Ball under which plaintiff would employ the driver of the tractor, and the driver would be under the jurisdiction and control of Ball at all times. Plaintiff signed the lease.[2] Additionally, Ball did not pay pension benefits on behalf of plaintiff as Godfrey had done, nor did plaintiff attempt to make payments on his own behalf. Ball also did not make social security contributions for plaintiff.

This situation continued for nine years. In 1965, after plaintiff switched to Local 200 in Milwaukee, he informed Clarence Johannes, a business representative for the teamsters union, that Ball was not making contributions to the pension fund on his behalf. Johannes personally contacted Robert Ball and told him that he had to make pension payments on behalf of plaintiff despite the fact that plaintiff owned his own tractor.

---

1. Jurisdiction is premised on 28 U.S.C. § 1332 and has not been contested.

2. Additional leases were executed over the years.

Ball then made a payment of $1,053.63 to the fund, which was calculated to cover the period from February 1, 1964 to October 1, 1965. At Ball's request, plaintiff paid $1,053.63 to Ball to cover the payment Ball had made to the fund. Ball began making payments to the fund on plaintiff's behalf on a regular basis as he did for his other employees. Ball deducted the payments to the fund from plaintiff's paychecks. At about the same time, Ball began making social security contributions for plaintiff, although there was no change in the terms and conditions of plaintiff's employment.

Plaintiff contends Johannes assured him that making the $1,053.60 payment would entitle him to retire at age 57, and that there would be no question of his right to receive pension benefits. Defendant denies that these statements were made.

In 1969, the trustees of the fund denied plaintiff's application for benefits by letter, stating that because no wages were reported to the Social Security Administration from 1956 to 1965, "it appears that the applicant was self employed and this has caused a break in service." The trustees did not, however, find that plaintiff would be eligible but for his self-employed status during that period.

## II.

In the previous decision in this case, it was decided that estoppel could be a basis for relief and that the facts alleged were sufficient to create a jury question on the estoppel claim. Specifically, there were jury questions on: (1) whether Johannes made a promise that if the $1,053.63 payment were made plaintiff would be eligible for pension benefits; (2) "whether defendant's manner of administering the fund made it reasonable for plaintiff to believe, and whether plaintiff did in fact believe, that Johannes had the necessary authority"; and (3) whether plaintiff "in good faith and in the exercise of reasonable prudence relied on this belief in making the payments in question * * *." 358 F.Supp. at 1340.

Although the parties would have been entitled to try these issues to a jury, as noted above, they have waived both trial by jury and by the Court and have submitted the case for a decision upon the affidavits, depositions, and exhibits contained in the file. This does not present the Court with any extreme difficulty, since all the relevant facts are agreed upon save one.

The contested fact is an essential one to plaintiff's estoppel claim: Did Johannes promise plaintiff that by the making of the $1,053.63 payment he could retire at age 57 and be entitled to pension benefits?

On this issue plaintiff has, of course, the burden of persuading the Court by a preponderance of the evidence that Johannes made the promise. Plaintiff, in a sworn affidavit, states that Johannes made the promise. Johannes, in his deposition, denies that he did so. Without having the benefit of oral testimony and cross-examination, it is difficult to discount the credibility of either plaintiff or Johannes.

From the circumstances, however, it is apparent that it is "more likely than not" that Johannes made the promise. The uncontradicted facts are that plaintiff reimbursed Ball for making the $1,053.63 payment with his own personal check and allowed Ball to deduct pension payments from his paychecks for a number of years. It is difficult to believe that plaintiff would have acted this way in the absence of a belief that Johannes had promised that he would be eligible for pension benefits. Further, Johannes did admit that he talked with plaintiff about contributions to the pension fund, although he denied making a specific promise of eligibility. Plaintiff has adequately satisfied his burden of persuasion on this issue.

On the issue of apparent authority, number (2) above on page 4, it is this Court's finding that the manner of

defendant's administration of the fund made it reasonable for plaintiff to believe that Johannes had the authority to make the promise he did, and that plaintiff in fact did believe Johannes had authority.

The relevant facts were summarized in the prior decision in 358 F.Supp. at 1339–1340 and need not be reiterated here.

■ Defendant has contended that plaintiff's reliance on these manifestations of authority was unreasonable because plaintiff had a duty to ascertain the limits of Johannes' authority to act for the fund. In support of this argument, defendant has cited Ingalls v. Commercial Ins. Co., 18 Wis.2d 233, 118 N.W.2d 178 (1962). In that case, after the insured had received written notice from the insurer cancelling his policy, he contacted his insurance agent who told him to disregard the cancellation notice and that the policy was still in effect. The Court there held that the agent could not revoke the cancellation. This authority is readily distinguishable from the instant facts. Johannes' promise did not attempt to revoke a decision by the fund denying plaintiff pension benefits. If the promise had occurred after the trustees decided to deny plaintiff's pension application, *Ingalls* would lend weight to a conclusion that plaintiff's reliance was unreasonable. But since here Johannes' promise occurred over three years before plaintiff's pension application was denied by the fund's trustees, the *Ingalls'* rule has no applicability.

Not only did defendant's manner of administering the fund make it reasonable for plaintiff to believe Johannes had authority, but the fact that plaintiff made the $1,053.63 payment to Ball shows that he did, in fact, believe Johannes had the requisite authority.

■ As to the issue denominated (3) above on page 4, the plaintiff did rely on the promise to his detriment. The payment plaintiff made to Ball and the deductions from his paycheck that plaintiff allowed Ball to make show that plaintiff was acting with the expectation that he would be eligible for a pension. Further, nothing in the depositions, affidavits, or exhibits contained in the file of this case contradict plaintiff's sworn assertion that he acted in good faith.

Additionally, the Court is satisfied that plaintiff has met his burden of showing that his reliance on Johannes' promise was reasonable.

■ Defendant's final argument is that the fund cannot be liable because the authority of an agent cannot exceed the authority of his principal, and in this case the trustees of the fund lacked authority to declare plaintiff eligible for pension benefits because of the pension plan's break in service and independent contractor provisions. This argument assumes that the trustees could not have approved plaintiff's application for pension benefits. On the present state of the record, it cannot be said that plaintiff would not be eligible for a pension under the plan.[3] Since it does not clearly appear that Johannes was acting beyond the authority of the trustees, the agency rule asserted by defendant is inapplicable.

### III.

The prior decision expressly reserved the question of what remedy plaintiff would be entitled to in the event his estoppel claim should be proven. 358 F. Supp. at 1340. Since plaintiff has adequately established the estoppel claim, the issue of what remedy plaintiff is entitled to must be resolved. As discussed above, plaintiff was entitled to have his application for pension benefits, made in

---

3. In the prior decision in this case, it was ruled that plaintiff was not self-employed under the applicable provisions of the pension plan. In footnote 1, 358 F.Supp. at 1334, it was noted that there may be other reasons why plaintiff was not entitled to pension benefits. Defendant has not argued that any other reasons are applicable.

July 1968, approved by the trustees of the fund. Neither party, however, has argued what is the exact amount plaintiff is entitled to, nor whether prejudgment interest or attorney's fees should be awarded.

It is therefore ordered that within twenty days of the filing date of this order, plaintiff submit a proposed judgment form in accordance with this decision and order along with a supporting brief indicating the calculations and authorities he wishes to rely on. Defendant shall have twenty days thereafter in which to respond, and the matter will thereafter be decided by the Court unless counsel request oral argument.