**MIDWEST COMMUNITY COUNCIL, INC., Jeffrey Clark, by his next friend, Marsha Clark, Marsha Clark, Mrs. Frances Lee, Teawona Lee and Timothy Lee, by their next friends, Mrs. Frances Lee, Mrs. Hiram Wells, and Mr. Hiram Wells, on their own behalf and on behalf of all those similarly situated, Plaintiffs,**

v.

**CHICAGO PARK DISTRICT, Edmund Kelly, in his capacity as Chicago Park District General Superintendent, Patrick O'Malley, in his capacity as Chicago Park District Board President, William A. Lee, in his capacity as Chicago Park District Board Vice-President, Sidney R. Marovitz, Iola McGowan, and Raymond F. Simon, in their capacities as Chicago Park District Board Members, Defendants.**

No. 79 C 3187.

United States District Court, N. D. Illinois, E. D.

July 29, 1980.

---

Gary T. Johnson, Franklin P. Auwarter, Robert J. Kriss, Mayer, Brown & Platt, Sybille C. Fritzsche, Kay Grossman, Chicago, Ill., for plaintiffs.

Joseph A. Power, Chicago Park District, Thomas A. Foran, Richard A. Devine, Foran, Wiss & Schultz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Plaintiffs bring this civil rights action seeking declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 2000d. Plaintiffs challenge policies and practices of the Chicago Park District which allegedly result in the disparate allocation of programs, facilities and services in parks servicing wards of the City of Chicago inhabited predominantly by black citizens. Jurisdiction is based on 28 U.S.C. § 1343.

Plaintiffs are Midwest Community Council, a not-for-profit service organization, Hiram and Audrey Wells, members of the Council's Board of Directors, and individual residents of Wards 24 and 27, two of the affected wards and served by Douglas and Garfield Parks. They seek to represent a class of all "residents of wards of the City of Chicago, Illinois as these wards are constituted by the redistricting ordinance of November 6, 1970, as amended November 15, 1974, which are inhabited by a population of largely Black persons, specifically Wards 2, 3, 4, 6, 16, 17, 20, 24 and 27."

Defendants are the Chicago Park District, Edmund Kelly, the District's General Superintendent and various officers and members of the Chicago Park District Board.

The complaint charges defendants with failing to provide equal recreational programs and facilities to areas predominantly populated by blacks. The discriminatory policies and practices are alleged to include allocating greater sums of money and facilities to parks located in wards whose population is largely composed of white persons,[1] failing to make repairs to facilities and park grounds in sectional parks located in black neighborhoods, including Douglas, Garfield and Ogden Parks,[2] and providing fewer services, such as senior citizen programs, arts and crafts programs and summer day camps, in parks connected to wards in which the proposed class members reside.

Before the Court is plaintiffs' motion for class certification under Fed.R.Civ.P. 23(b)(2). Defendants strenuously object to the motion, contending that plaintiffs have not established the necessary prerequisites of Rule 23(a) or (b)(2).

Defendants' first objection attacks the essence of the proposed class. Defendants assert that the class is amorphous and not identifiable.

---

1. The so-called "white wards" include Wards 13, 19, 23, 30, 35, 36, 38, 39, 40, 41, 45, 47, 49 and 50.

2. The complaint compares the condition of these parks with Horner and Riis Parks located in "white wards."

■ The proposed class is defined by the wards in which its members reside. The affected wards are enumerated, and their geographic boundaries are described in terms of an ordinance that fixes them. Moreover, when, as here, defendants' alleged policies and practices shape the contours of the class, attacks on its definiteness are not entitled to weighty consideration provided all other requirements for class certification are established. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977); *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1072 (7th Cir. 1976), *modified in part on rehearing en banc*, 548 F.2d 715 (7th Cir. 1977) (equally divided court).

■■ In order to prevail on this motion, plaintiffs must show that the class is so numerous that joinder of all members is impracticable, common questions of law or fact are presented, the claims or defenses of the representative parties are typical of the claims or defenses of the class members and the representatives will provide fair and adequate representation for class interests. Fed.R.Civ.P. 23(a). *See Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977); *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). In addition, a class maintainable under Rule 23(b)(2) requires a showing that defendants acted or refused to act on grounds generally applicable to the class so that declaratory and final injunctive relief is appropriate to the class as a whole.

Defendants do not explicitly object to the numerosity of the class and indeed to do so would be frivolous. The proposed class consists of all residents of nine wards. The combined estimated population is 455,000 persons. Such a large number of potential claimants makes joinder not only impracticable but virtually impossible.

Defendants argue that plaintiffs have not alleged facts sufficiently specific to establish that there are questions of law or fact common to all members of the class.

■ The complaint, however, depicts a scenario of city-wide disparities between parks serving largely black sections of the city and parks located in white areas. Where broad discriminatory policies and practices constitute the gravamen of a class suit, common questions of law or fact are necessarily presented. *Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977).

Further, we do not agree that there is a paucity of facts on this record. The complaint lists numerous acts which are purported to result in inferior recreational opportunities in black wards. The complaint is supplemented by answers to interrogatories which list the availability and condition of rest rooms, the collection of litter and refuse, maintenance of equipment such as park benches and playground equipment and the upkeep of grass, shrubs and trees among the inferior condition of the parks.

■ Whether defendants allocate greater sums of money to parks in white areas, whether defendants fail to provide the same programs and services to black wards, whether defendants fail to make repairs of facilities in parks serving black wards and whether, if inferior conditions are found to exist, defendants' acts were motivated by a discriminatory purpose are questions common to all members of the class. *See Johnson v. City of Arcadia*, 450 F.Supp. 1363 (M.D.Fla.1978).

The typicality prerequisite requires a comparison of the representatives' claims with the general claims of the proposed class. *See Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975). Although only limited discovery has been taken, the allegations of the complaint supplemented by the information contained in the interrogatories establish that the claims are typical.

Some of the sweeping discriminatory policies such as the disparate allocation of funds and the failure to repair existing facilities and grounds affect all citizens of the black wards and have a detrimental impact on their neighborhoods. Some of the practices, such as fewer summer day camps and senior citizen programs, have a greater effect on certain classes of people.

The named plaintiffs represent varied elements of the community. For example, Jeffrey Clark, Teawona Lee and Timothy Lee are children whose ages range from eight to sixteen years old. Their mothers, who are also named plaintiffs, are adult residents of two wards allegedly affected by defendants' discriminatory conduct. Hiram and Audrey Wells are senior citizens of one of those communities.

Since all members of the community are harmed if inferior facilities or services are provided the named plaintiffs as well as The Midwest Community Council, some of whose members reside in the aggrieved wards, The Midwest Community Counsel would present claims typical of the entire community. However, even claims that are more peculiar to certain segments of the community are shared by some of the named plaintiffs. Thus, the claims of Jeffrey Clark, Teawona and Timothy Lee that they are deprived of an equal opportunity to participate in summer day camps is typical of all children who live in the designated wards. Similarly, the claims of Hiram and Audrey Wells, that senior citizens residing in black wards are not provided the same programs as those living in white wards, are typical of the claims of other members of those communities.

Defendants' major objection pertains to the adequacy of representation requirement. They contend that both the individual plaintiffs and The Midwest Community Council lack standing. In addition, they argue that all racial and ethnic minorities within the designated wards are not represented.

■■ It is well-settled that individuals who represent a class must allege that they personally have suffered from the injury alleged. *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975); *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498–99 (7th Cir. 1972). Actual or threatened injury in turn is constitutionally required in order to establish standing. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct.

1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

Defendants argue that the individual plaintiffs fail to allege any personal injury and that The Midwest Community Council has not demonstrated injury to the organization or to its members.

The allegations of the complaint as well as the supporting affidavits state that the individual plaintiffs "stand ready to use the parks . . . more fully if defendants' illegal conduct is enjoined." The implication of these verified averments is that those plaintiffs have used the parks in the past and, were better services provided, repairs made and facilities maintained, they would use the parks to a greater extent.

Moreover, plaintiffs alleged that they are deprived of equal health benefits and personal development because the programs and facilities are unequally disbursed. These allegations relate to the inherent quality of life in the communities in which plaintiffs reside. Thus, the alleged harm caused by defendants' acts directly affects persons residing in areas adjacent to the parks involved. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The injury to The Midwest Community Council is apparent. Many of its members reside in the East Garfield Park area, one of the parks allegedly harmed by defendants' policies and practices. Further, the complaint alleges that defendants' discriminatory actions also result in propagating segregated communities, making those wards served by inferior parks less desirable places in which to live. The Midwest Community Council's activities, which are designed to combat problems in the East Garfield Park area, are frustrated when certain official policies generate precisely the kinds of defects the organization is designed to rectify.

Defendants' contention that the named plaintiffs do not represent all racial and ethnic groups is apparently an assertion that the representatives' interests as black

citizens are antagonistic to members of the class.

Although the alleged policies and practices have a greater impact on a larger number of blacks because of the racial composition of the communities affected, each resident of those wards, regardless of race or national origin, is deprived of the same benefits provided in parks located in predominantly white communities. In addition, defendants' acts are alleged to perpetuate segregated communities. The social, business and professional advantages of living in an integrated community have been found to benefit white citizens as well as black citizens. *See Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). Thus, there is no evidence on this record that the interests of whites or other ethnic groups are not harmonious with the interests of the black persons seeking to represent the class. However, if antagonistic interests arise at a later stage of the litigation, Rule 23 provides the means to remedy any conflicts. *See* Fed.R.Civ.P. Rule 23(c)(1) and (d)(2). *See also Ridgeway v. International Brotherhood of Electrical Workers,* 74 F.R.D. 597, 605 (N.D.Ill.1977).

Defendants' final arguments pertain to the requirements of Rule 23(b)(2). They contend that there is no need to invoke Rule 23(b)(2)'s provisions since, if the relief requested is granted, it will necessarily affect all potential class members and that since no substantial and immediate threat of injury exists, plaintiffs are not entitled to injunctive relief.

In *Alliance to End Repression v. Rochford,* 565 F.2d 975, 980 (7th Cir. 1977), the court provided two factors to consider in determining whether there was a "need" for a class. First, the court should look to whether the suit challenged the constitutionality of a statue on its face, in which case, certification may not be necessary, or a general practice, in which case certification is appropriate. Second, the court should decide whether certification would affect the admissibility of evidence.

In this case, all of the claims arise out of policies and practices. There is no reference to a statute. Also, because defendants' actions are alleged to injure residents of communities other than those in which the named plaintiffs reside, evidence relevant to those communities may be excluded. Consequently, there is a need to certify a class.

Defendants' argument that plaintiffs have not alleged substantial and immediate harm, which would entitle them to injunctive relief, is spurious. The policies and practices alleged are on-going and the harmful effects both in terms of the deprivation of recreational services and the quality of community life are continuous. The policies and practices then are likely to cause injury to all residents of the designated communities. *See Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1072 (7th Cir. 1976), *modified in part on rehearing en banc,* 548 F.2d 715 (7th Cir. 1977) (equally divided court). Defendants' conduct affects all class members and declaratory and injunctive relief would be equally appropriate to all members of the class.

Accordingly, since plaintiffs have demonstrated compliance with all the applicable prerequisites of Rule 23, their motion for class certification is granted. A class will be certified under Rule 23(b)(2) that is composed of

"all residents of wards of the City of Chicago, Illinois as those wards are constituted by the redistricting ordinance of November 6, 1970, as amended November 15, 1974, which are inhabited by a population of largely Black persons, specifically Wards 2, 3, 4, 6, 16, 17, 20, 24 and 27."