Dave SPENCER, Lowell Tippit, Robert Gahr and Thomas Zehnder, individually and on behalf of all similarly situated persons, Plaintiffs,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant.

No. 89 C 7673.

United States District Court, N.D. Illinois, E.D.

Dec. 5, 1991.

Leon M. Despres, Thomas H. Geoghegan, Amy L. Becket, Clare M. Kralovec, Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiffs.

Margaret M. Fahrenbach, Central States, Southeast & Southwest Areas Pension Fund, Rosemont, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Dave Spencer, Lowell Tippit, Robert Gahr, and Thomas Zehnder bring this action against Central States, Southeast and Southwest Areas Pension Fund ("Central States," the "Fund," or the "Plan") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). Presently pending before the court are plaintiffs' motion for class certification and Central States' motion for summary judgment. For the reasons as set forth below, plaintiffs' motion for class certification is denied, and Central States' motion for summary judgment is granted.

### I. Background

This lawsuit has been filed by three former employees and one current employee of the Kroger Company ("Kroger"). All four are members of various International Brotherhood of Teamsters ("IBT") local unions. Plaintiffs Spencer, Tippit, Gahr, and Zehnder seek to represent a class including

> all active and retired Kroger employees represented by the [IBT] as warehouse, transportation, mechanics, or other employees employed under a general warehouse-transportation type contract who

were employed by Kroger as of 1970; who were eligible to participate in contract ratification votes for the contract supplements concerning pensions in 1970; who became beneficiaries of the Central States, Southeast Areas Pension Fund as of January, 1971; and who would be or would have been eligible for a deferred benefit, 30–and–out benefit, contribution-based or transition benefit (or, for active workers, other new contributory-based benefits) if their pre–1971 service with Kroger is treated as contributory.

Prior to 1971, Kroger provided its employees with a profit sharing and pension plan. Approximately 6500 of the employees covered under the pension plan were represented by the IBT. In 1970, Kroger's collective bargaining agreement ("CBA") with the IBT expired, prompting a new agreement for the term 1971–1973 (the "1971 agreement"). The 1971 agreement contained a "pension supplement," providing that, upon ratification by the union membership, all 6500 Kroger employees would switch from the Kroger pension plan to the Fund administered by Central States.

Plaintiffs contend that they were induced to ratify the 1971 agreement based on representations made by various individuals to local union bargaining committee members. Specifically, the employees claim that several union officials and Fund administrators orally promised that, under the 1971 agreement: (1) Kroger employees "would always be eligible for the highest benefits in their respective age-and-service categories"; (2) pre–1971 service "would count as full service credit, although no contributions were made for it"; and (3) Kroger "would thereafter make contributions to the Plan for plaintiffs at the highest possible (weekly) rate." In addition, plaintiffs have directed our attention to a letter from the Fund's executive director, Edward Murtha, dated May 28, 1970. This letter, which confirmed the terms under which the employees would be accepted into the Central States Fund, allegedly "reflected" the oral promises to the employees at the several local union meetings.

At the time plaintiffs joined the Central States Plan in 1971, they were in the highest benefit category. That category, the "Twenty–Year Service Pension," required the employee to accumulate twenty years of service credit to qualify, but the service credit need not be "contributory." In addition, to be eligible for benefits the employee had to be fifty-seven years old and have a minimum of 8.6 years of actual paid-in service. Plaintiffs assert that they meet these requirements.

In 1982, the Fund created a new category that paid higher benefits. The new "Twenty–Year Deferred Benefit Plan" was based exclusively on the number of years of "contributory service" held by the employee. An employee accumulated "contributory service credit" for the years in which he worked for an employer that actually contributed to the Fund. In 1985 and 1987, the Fund created additional categories of higher paying benefits. Once again, these new categories were exclusively based on "contributory service."

In November 1986, Kroger closed its St. Louis plant, dismissing thousands of employees. Finding themselves unemployed, many of the dismissed employees chose to retire. Upon filing for benefits from the Fund, the employees discovered that they did not receive contributory service credit for the years prior to 1971, and thus were not eligible for the higher paying benefits. Subsequently, the employees learned that, in 1986, the Fund had begun awarding contributory service credit to new participants for years preceding their involvement with the Fund. Plaintiffs allege, for instance, that the Fund retroactively granted an average of three years of contributory service credit to approximately 2200 United Parcel Service employees. Similarly, plaintiffs assert that the Fund induced CSX Company employees to join the Plan by offering such credit.

In October of 1989, plaintiffs filed suit against Central States, seeking class certification and alleging a cause of action grounded in ERISA's civil enforcement provisions and in equity. On March 13, 1990, the parties submitted an "Agreed Order of

Dismissal," permitting the plaintiffs to exhaust their administrative remedies. After the Fund rejected their arguments, the plaintiffs filed an amended complaint, seeking: (1) a declaration of rights under the Plan pursuant to §§ 502(a)(1)(B) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3); (2) a determination that the Fund trustees breached their fiduciary duties; (3) a finding that the Plan contains a "structural defect" within the meaning of § 302(c)(5) of the LMRA; and (4) under the theory of equitable estoppel, an award of contributory service credit for the years preceding 1971.

## II. Class Certification

Rule 23 of the Federal Rules of Civil Procedure establishes a two-step procedure to determine if a class action is appropriate. The court must first inquire into whether the class meets the four preliminary requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, a class action that satisfies all four of the Rule 23(a) requirements must also qualify under one of the three subsections of Rule 23(b). In the instant case, plaintiffs seek certification of the class under Rule 23(b)(2), which provides that a class action is proper if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

In evaluating the motion for class certification, the allegations made in support of certification are taken as true, and we do not examine the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986). The burden of showing that the requirements for class certification have been met rests with the plaintiffs. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984); *Riordan,* 113 F.R.D. at 62.

■■■■ The first two prerequisites of Rule 23(a) are clearly met in this case, *i.e.,* numerosity [1] and commonality.[2] As such, we direct our attention to Rule 23(a)(3), which mandates "that the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

■■ Typicality, like the commonality and adequacy-of-representation requirements, "is intended as a safeguard to insure that the named plaintiff[s'] interests are substantially coextensive with the interests of the class." *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 373 (D.Del.1990); *see also General Tel. Co.,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. Accordingly, the court must determine if "the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983); *Patrykus v. Gomilla,* 121 F.R.D. 357, 361–62 (N.D.Ill.1988). The typicality requirement is satisfied, and factual differences will not render a claim atypical,

---

**1.** Plaintiffs assert, and Central States does not dispute, that the class as defined consists of approximately 2,000 present and former employees of Kroger. Obviously, the class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *see Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 343 (N.D.Ill.1978) (class of over 1,000 indisputably sufficient).

**2.** Fed.R.Civ.P. 23(a)(2) requires that there be a question of law or fact common to the class.

"Not all factual or legal questions raised in the lawsuit need be common so long as a single issue is common to all class members." *Riordan,* 113 F.R.D. at 63 (citing *Midwest Community Council, Inc. v. Chicago Park Dist.,* 87 F.R.D. 457 (N.D.Ill.1980)). In the instant case, for example, the issue of whether the Fund breached its fiduciary duty by offering contributory service credit to some Plan participants and not others poses questions of law and fact common to all class members.

"if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente*, 713 F.2d at 232 (citations omitted); *Riordan*, 113 F.R.D. at 63. To be sure, "the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims." *Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D.Fla.1990) (citing *General Tel. Co.*, 457 U.S. 147, 102 S.Ct. 2364). "If defendants' course of conduct gives rise to the claims of all class members, and defendants have not taken any action unique to the named plaintiff[s], then the representative[s'] claim[s] [are] typical." *Deutschman*, 132 F.R.D. at 373 (citations omitted).

■ Plaintiffs argue that the legal issues raised in their amended complaint are identical to, and therefore typical of, the claims of the other class members. Specifically, they focus on the elements necessary to sustain their claims and argue that they are the same elements that all class members must prove to prevail against the Fund. Be that as it may, merely pointing to common issues of law is insufficient to meet the typicality requirement when the facts required to prove the claims are markedly different between class members. Contrary to plaintiffs' assertion, the typicality requirement can be satisfied notwithstanding factual discord between class members only when the representatives' claims arise from the "same event or practice or course of conduct that gives rise to the claims of [the] other class members." *De La Fuente*, 713 F.2d at 232. In other words, while having the same legal theory as all other class members is a necessary element of the typicality requirement, it is insufficient standing alone.

■ All four of plaintiffs' claims hinge on representations made by various union officials and Fund trustees to the approxi-mately 2,000 class members. Plaintiffs claim that these representations entitle them to treat pre–1971 service with Kroger as contributory service, and seek a declaration to that effect under § 502(a)(1)(B) of ERISA. Moreover, their structural defect and fiduciary duty claims rest on the fact that Central States, contrary to its promise, did not count the Kroger employees' pre–1971 service as contributory, while granting UPS employees contributory service credit for years prior to entering the Plan. Finally, plaintiffs' equitable estoppel claim explicitly alleges that the Fund, through various trustees and IBT officials, made representations upon which plaintiffs relied to their detriment.

The representations supporting plaintiffs' claims, however, were not uniformly communicated to all 2,000 class members. Indeed, these representations were communicated orally at 27 different local union meetings.[3] Further, it is undisputed that no two presentations to the various local unions were the same. For instance, Secretary Treasurer Saffo of Local 610 allegedly made the statements regarding pension rights to the St. Louis employees. Gahr Dep. at 36–39; Spencer Dep. at 66, 84–85; Tippit Dep. at 21–25. Plaintiff Zehnder, however, relied on statements made by one or more of the local representatives in Cincinnati—Cooper, Meyers, and Greer—and possibly by an unidentified representative from the IBT. Zehnder Dep. at 21–23. Further, while Zehnder believed that nothing was passed out in writing at the Cincinnati meeting, Zehnder Dep. at 28–29, Tippit was certain that a written summary was distributed in St. Louis setting forth the terms that Saffo was describing orally. Tippit Dep. at 12. Therefore, questions such as what representations were made, by whom, and whether the speaker had any relationship with the Fund thereby justifying attribution of the statement to Central States will require evidence that will necessarily differ among class members according to which of the 27 local union meetings

---

**3.** While plaintiffs also rely on the Murtha letter, that letter does not contain any representations regarding pre–1971 service. *See infra* subsection III(B)(2) of this opinion. Thus, any specific evidence of fraud or material misrepresentation regarding the treatment of pre–1971 service will be based substantially, if not exclusively, on the oral statements in question.

each attended. In addition, the extent to which each class member relied on these representations is relevant to plaintiffs' equitable estoppel claim, and will vary not only among the 27 locals, but from individual to individual.

Plaintiffs, citing *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 676 (N.D.Ill.1989), and *Brotherhood Ry. Carmen v. Delpro Co.*, 98 F.R.D. 471, 474 (D.Del.1983), argue that the factual variations discussed above are insufficient to defeat class certification. We disagree. Because the oral representations allegedly were communicated to 27 different groups of Kroger employees, the substance and presentation of which most likely varied from group to group, we can only conclude that plaintiffs' claims do not "arise from the same event or practice or course of conduct that gave rise to the claims of the other class members." *De La Fuente*, 713 F.2d at 232; *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 691 (N.D.Ind.1989) (claim of fraud in student loan program not appropriate for class action where claim turns on question of oral misrepresentation). It is important to note that neither *Delpro* nor *Heastie* confronted claims that were dependant on the existence of oral representations.[4] In such a case where an action is based substantially on oral rather than written communications, as in the instant case, treatment as a class action is generally inappropriate. *Glick v. E.F. Hutton & Co.*, 106 F.R.D. 446, 449 (E.D.Pa. 1985); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 888 (D.N.J.1984); *see also Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.

1973); *Westlake v. Abrams*, 575 F.Supp. 58, 61–63 (N.D.Ga.1983); *McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D.Kan.1983); *Seiden v. Nicholson*, 69 F.R.D. 681, 686 (N.D.Ill.1976).[5]

In sum, having failed to meet the requirement of Rule 23(a)(3), we deny plaintiffs' motion to certify the class. Our resolution of the motion under Rule 23(a)(3) obviates the need to consider arguments pursuant to Rules 23(a)(4) and 23(b). *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 572 F.Supp. 1494, 1500 (N.D.Ill.1983); *see also Eisen*, 417 U.S. at 163, 94 S.Ct. at 2145. We now turn to Central States' motion for summary judgment.

### III. Central States' Motion for Summary Judgment

Plaintiffs' four-count amended complaint is based essentially on two assertions: (1) that agents of the Fund made promises in 1970 to the plaintiffs that they "would always be in the highest pension category"; and (2) that the Fund in 1987 granted three years of contributory service credit to UPS employees in exchange for a UPS agreement to substantially increase its contribution levels. Specifically, the alleged representations constitute the basis for Counts I and IV, while the disparate treatment of the UPS employees provides the foundation for Counts II and III. Accordingly, we will begin our analysis with Counts I and IV, and proceed to Counts II and III in turn.

### A. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled

---

**4.** In *Delpro*, the union plaintiff claimed that Delpro intentionally, willfully, and in bad faith violated the Railway Labor Act by conducting negotiations in such a manner as to lead to a failure to achieve an agreement. *Delpro*, 98 F.R.D. at 473. The court in *Heastie* was faced with the question of whether defendant's activities violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, and the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 261–267. *Heastie*, 125 F.R.D. at 671.

**5.** We recognize that an exception exists for oral communications that were standardized: "If ...

essentially identical representations were made to all members of the proposed class, certification under Rule 23 may be permissible." *Glick*, 106 F.R.D. at 449; *Seiler*, 102 F.R.D. at 888. Plaintiffs bear the burden, however, to demonstrate that the defendant's communications were uniform in nature. *Glick*, 106 F.R.D. at 450; *Seiler*, 102 F.R.D. at 889. In the present case, plaintiffs have not proffered any evidence indicating that the communications to the 27 various local unions were standardized. Indeed, as discussed above, all evidence suggests a conclusion to the contrary.

to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

### B. Count I

In Count I of the amended complaint, plaintiffs seek a declaration of rights under the Central States Fund pursuant to §§ 502(a)(1)(B) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). In particular, plaintiffs beseech a declaration that their pre–1971 service with Kroger be treated as contributory service, rendering each plaintiff eligible for the highest benefits under the Plan for which his total contributory service credit would entitle him. Plaintiffs have exhausted their administrative remedies under the Plan; the Fund denied plaintiffs' final, third-step appeals by letters dated November 26, 1990.

#### 1. Standard of Review Regarding the Fund's Determination

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [§ 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Central States, however, argues that the *de novo* standard of review is inappropriate in this case, and

plaintiffs do not dispute this contention. Indeed, under the Plan Agreement, the trustees

> shall have the power to construe the provisions of this Agreement and the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers. The Trustees are vested with discretionary and final authority in construing plan documents of the Pension Plan.

Plan Agreement art. IV, § 17; *see also id.* art. V, § 2. The effect of the above quoted language is to entrust the trustees with the highest level of discretion in determining both plaintiffs' eligibility for benefits and the proper construction of the Plan's terms. *See Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir.1990) (interpreting similar provisions of the Central States Health and Welfare Trust Agreement). As such, the trustees' decision falls outside the scope of the *de novo* review adopted in *Firestone*.

The question of which standard to apply given the inapplicability of *de novo* review was not addressed by the Court in *Firestone*. The Seventh Circuit, however, has filled this void. Relying on the admonition in *Firestone* that courts should refer to the common law of trusts for guidance in ERISA decisions, the Seventh Circuit has concluded that

> [c]ourts facing a decision by a trustee vested with this highest level of discretion [*i.e.*, discretion limited only by the requirement that decisions be rendered in good faith] should review the trustee's decisions under a standard embodying the highest level of deference. That standard is the arbitrary and capricious standard.

*Exbom*, 900 F.2d at 1142 (citing *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990)). As the discretion afforded the Central States trustees under the relevant Plan Agreement is constrained only by the requirement of good faith, this court must uphold the trustees'

decision not to credit the plaintiffs with their pre–1971 service unless that decision was arbitrary and capricious.

### 2. Appropriateness of the Fund's Determination

The Central States trustees' decision to exclude plaintiffs' pre–1971 service can only be considered arbitrary and capricious if the trustees relies upon

> factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, of-- fered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 936 (7th Cir.1989).

■ The undisputed, material facts reveal that the Fund's determination was neither arbitrary nor capricious. Plaintiffs offer no rebuttal to the trustees' conclusion that the language of the Plan Agreement does not provide that the Kroger employees' pre–1971 service will be credited as contributory.[6] Plaintiffs do contend that the Murtha letter, dated May 28, 1970, amended the Plan to reflect the promises made to the Kroger employees' that their pre–1971 service would be counted as contributory service. The trustees, however, rejected this construction of the Murtha letter, and we find no reason to overturn that determination. Indeed, the language of the letter supports the trustees' position. The letter does not state that Kroger employees will be in the highest pension category. Nor does it state that Kroger employees will always be eligible for the highest benefits available or that their prior years of service with Kroger would be treated as contributory service. Rather, the letter explicitly states that "[i]n the event a higher contribution rate is negotiated in the future, the higher set of benefits

will be paid only after 100 weeks of contributions have been paid under the higher contribution."

■ Therefore, of the evidence submitted before the trustees and this court, only that related to the oral representations remains. However, this evidence cannot support a finding of arbitrariness or capriciousness since "ERISA does not allow oral modifications of pension plan provisions." *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989), *cert. denied,* ── U.S. ──, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *see* 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."); 29 U.S.C. § 1102(b)(3) ("Every employee benefit plan shall provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."). Plaintiffs have advanced two arguments in an attempt to circumvent the holding of *Lister*, both of which are untenable. First, citing *Jenkins v. Local 705 Int'l Brotherhood of Teamsters Pension Plan*, 713 F.2d 247 (7th Cir.1983), and *Lumkin v. Envirodyne Indus., Inc.*, 933 F.2d 449 (7th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991), plaintiffs contend that no ERISA plan states every term in writing, yet courts routinely uphold those plans. For instance, plaintiffs note that the Central States Plan does not list participants by name or state which category into which those participants fall, thus requiring oral testimony. Obviously, in any specific case, a court may have to look beyond the four corners of the Plan Agreement to determine if the participant in question has fulfilled the eligibility requirements of the Plan. From this noncontroversial premise, however, it does not follow that the eligibility requirements themselves need not be in writing or that those written requirements may be orally modified. Such a proposition is at best unsupported by the case law as cited and at worst disingenuous.

---

**6.** The pertinent provision of the Pension Agreement is as follows: "Contributory Service is earned by a Participant for any employment

with a Contributing Employer required to make Employer contributions on his behalf according to a Collective Bargaining Agreement."

In addition, plaintiffs, citing *Moore v. Cannelton Indus., Inc. Management. Pension Plan*, 842 F.2d 1291 (4th Cir.1988) (unpublished disposition), argue that other circuits have permitted oral modifications of pension plans where the oral statement in question pre-dated ERISA. Plaintiffs' argument calls into question the substantive law applicable in this case. It is true that the alleged oral representations occurred long before the effective date of ERISA, September 2, 1974. However, the Seventh Circuit has held that a cause of action arises under § 502 of ERISA at the time the trustees deny an application for benefits. *Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir.1978). Because plaintiffs' applications for benefits were denied after September 2, 1974, ERISA and the federal common law developed pursuant to ERISA provide the substantive law applicable to the present claim. To the extent that *Moore* may hold otherwise, we decline to follow the Fourth Circuit precedent.[7]

Concluding that the trustees' denial of benefits in the present case was not arbitrary or capricious, we grant Central States' motion for summary judgment on Count I of plaintiffs' amended complaint.

### C. Count IV

In Count IV, plaintiffs attempt to compel the Fund to credit their pre–1971 service with Kroger as contributory under the theory of equitable estoppel. Specifically, plaintiffs contend that they relied to their detriment upon representations made by various agents of the Fund, thus estopping Central States from denying eligibility to the plaintiffs for the highest benefits under the Plan. In response, Central States argues that plaintiffs' estoppel claim is preempted by ERISA. We agree.

In *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir.1990), the Seventh Circuit held

that "estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA." The court, however, explicitly reserved judgment on whether estoppel principles should be allowed in claims against multi-employer pension funds, as is Central States. *Id.* The reasoning behind this reservation of judgment highlights the strong policy reasons for denying such claims in the context of multi-employer funds. For instance, the court noted that these funds have multiple fiduciaries, and that it would be unfair to allow one fiduciary to bind all of the others. *Id.* More significantly, forcing a multi-employer fund to make payments outside of the strict terms of the Plan Agreement could threaten the actuarial soundness of that Fund, thereby hurting all employees associated with the Plan. *Id.*

In support of the application of equitable estoppel in the instant case, plaintiffs note that the doctrine was applied against Central States in the case *Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332 (E.D.Wis.1973), *later proceeding*, 394 F.Supp. 193 (E.D.Wis.1975), *aff'd*, 570 F.2d 347 (7th Cir.1977). Be that as it may, *Scheuer* provides no guidance since that case was filed prior to September 2, 1974, the effective date of ERISA. Further, to the extent that other circuits have allowed estoppel claims against multi-employer pension funds, *see Cleary v. Graphic Communication Int'l Union Supplemental Retirement and Disability Fund*, 841 F.2d 444 (1st Cir.1988) (permitting estoppel claims in "extraordinary circumstances," yet ultimately refusing to bind the Plan to the oral representations made by union officials and Plan administrators), we conclude that the strong public policy concerns articulated by the Seventh Circuit preclude the maintenance of an estoppel claim against Central States.[8] Accordingly, we

---

7. We observe that even if this court were to disregard *Reiherzer* and hold that the act giving rise to the cause of action occurred prior to the effective date of ERISA, plaintiffs' claim would nonetheless falter. To the extent that the significant act ensued before September 2, 1974, this court would not have jurisdiction over any claims brought under ERISA, as is Count I. *Coward v. Colgate–Palmolive Co.*, 686 F.2d 1230

(7th Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 572 F.Supp. 1494, 1502 (N.D.Ill.1983).

8. Plaintiffs further argue that ERISA does not preempt a claim of equitable estoppel—a state-law cause of action—based on acts or omissions that transpired prior to September 2, 1974, the

grant summary judgment in favor of Central States on Count IV of plaintiffs' amended complaint.

### D. Count II

Count II of plaintiffs' amended complaint alleges that Central States breached its fiduciary duty by refusing Kroger employees pre–1971 contributory service credit while simultaneously granting other Plan participants credit for service performed prior to their involvement with the Fund. In response, the Fund argues that: (1) the fiduciary duties imposed under ERISA inures to the benefit of the Fund as a whole and not to any particular participant; (2) plaintiffs' preference claim was never presented as such to the trustees; (3) plaintiffs have failed to set forth facts sufficient to establish a deprivation of a vested right; and (4) the Kroger employees are not similarly situated to the UPS group. We address each of the Fund's arguments in turn.

Section 404(a) of ERISA sets forth the governing standard in this case, providing in pertinent part:

(1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instructions are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a) (1985 & Supp.1991). For the definition of a fiduciary, however, we must turn to 29 U.S.C. § 1002(21):

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Central States' initial assertion that it does not owe plaintiffs a fiduciary duty under § 404(a) stems from dicta in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141–44, 105 S.Ct. 3085, 3090–91, 87 L.Ed.2d 96 (1985), which may be read as suggesting that the fiduciary duties imposed by ERISA on plan administrators run only to the plan itself, as opposed to individual beneficiaries. As such, the Fund argues that plaintiffs may not bring this action seeking individual benefits. We disagree. In *Mass Mutual*, the Supreme Court held that a plaintiff may not be awarded extra-constitutional damages based on a delay in the processing of a claim. *Id.* at 148, 105 S.Ct. at 3093. We do not take this limited holding to mean that a pension fund owes no duty to its beneficiaries. To the contrary, the Court in *Mass Mutual* noted that "[t]here can be no disagreement with the ... conclusion that ... a beneficiary [may] bring an action against a fiduciary who has violated [a fiduciary duty imposed under ERISA]." *Id.* at 140, 105 S.Ct. at 3089. Moreover, Central States' proposition flies in the face of the legislative history of ERISA. As noted by Justice Brennan, "Congress intended by § 404(a) to incorpo-

effective date of ERISA. As discussed *supra* subsection III(B)(2), however, the significant act giving rise to a cause of action—the denial of benefits—occurred after September 2, 1974, bringing plaintiffs' claims within the ambit of ERISA.

rate the fiduciary standards of trust law into ERISA, and it is black letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Id.* at 152–53, 105 S.Ct. at 3095–96 (Brennan, J., dissenting) (citations omitted). Indeed, other courts have found that the creation of preferences among participants can give rise to a breach of fiduciary duty claim. *See Elser v. I.A.M. Nat. Pension Fund*, 684 F.2d 648 (9th Cir.1982) (forfeiture provision which arbitrarily and capriciously discriminated among participants amounts to a breach of fiduciary duty), *cert. denied*, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983); *Smith v. National Distillers and Chemical Corp.*, 728 F.Supp. 491 (W.D.Tenn.1989) (trustees may not grant preferences as between participants or beneficiaries of a plan); *Winpisinger v. Aurora Corp. of Illinois*, 456 F.Supp. 559 (N.D.Ohio 1978) (retroactive cancellation of past benefits of selected participants is inconsistent with fiduciary duties).

■ Central States' claim that plaintiffs' preferential treatment argument was not presented to the trustees, requiring us to remand the matter to the Fund, *see Wardle v. Central States Southeast and Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), is likewise without merit. The transcripts from the earlier hearing before the Fund clearly highlight the preferential treatment given to UPS employees and offered to the CSX employees. The Fund admits as much by conceding that plaintiffs used those "examples" to establish that the trustees had the "power" to grant credit for service prior to affiliation with the Plan. While plaintiffs did not explicitly use the term "breach of fiduciary duty" when describing the preference, the substance of the claim certainly was presented to the Fund. We now move to the merits of plaintiffs' claim.

■ In order to survive the present motion for summary judgment, plaintiffs must proffer facts sufficient to establish a deprivation of a vested right. *See United Air Lines*, 572 F.Supp. at 1504 n. 6. Indeed,

both *Elser* and *Winpisinger*, cited by plaintiffs in support of their § 404(a) claim, involved divesting some plan participants of past service credit, to the advantage of other participants. Plaintiffs do not dispute the general requirement, but rather contend that they were in fact deprived of a vested right. Specifically, plaintiffs argue that the representations regarding pre–1971 service with Kroger created a vested right to credit for that service, and that by divesting them of credit for the pre–1971 service, the Fund was able to give the UPS workers credit for three years prior to their affiliation with the Plan. However, as discussed *supra* subsection III(B)(2), the rights granted participants as a matter of law are confined to those expressed in the written agreement; oral representations may not modify the terms of the Plan. Accordingly, plaintiffs possessed no vested right in contributory credit for service prior to 1971.

■ In addition, the difference in treatment between plaintiffs and the UPS workers cannot be considered arbitrary and capricious if both groups were not similarly situated. *See Smith*, 728 F.Supp. at 494 (concluding that because the two groups of employees were not similarly situated plaintiffs could not sustain an action for breach of fiduciary duty on the basis of preferential treatment between participants); *United Air Lines*, 572 F.Supp. at 1501 n. 3 ("nothing in ERISA requires the provision of identical benefit plans for differently-situated employee groups"). Central States has set forth evidence indicating that neither the UPS employees nor the CSX workers were similarly situated to plaintiffs. UPS was a contributing employer contemplating an increase in its contribution rates for a group of UPS employees in connection with a new CBA. The Fund's actuaries determined that the revenue provided through the enlarged contribution rate would exceed the additional benefits the Fund would become liable to pay if it granted the group three years of contributory service credit. CSX was a company that the IBT was attempting to organize. After an actuarial study of the composition of the CSX employee group, the Fund is-

sued proposed terms of acceptance for the group should a CBA be reached providing for contributions into the Fund. One of the terms of acceptance provided that contributory credit for up to five years would be granted by the Fund. Plaintiffs have failed to proffer any facts in response tending to show that their group is similarly situated to either the CSX or the UPS employee groups. Instead, plaintiffs attribute this failure to the lack of cooperation on the part of Central States with regard to discovery. To the extent that the Fund refused to disclose relevant discovery materials, however, plaintiffs' course of action should have been to file a motion to compel. Plaintiffs' failure to file such a motion is insufficient to withstand the instant motion for summary judgment on Count II of the amended complaint.

### E. Count III

▮ Finally, plaintiffs claim that the Fund's disparate treatment between them and the UPS and CSX employee groups constitutes a "structural defect," within the meaning of § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Section 302(c)(5) prohibits employers from investing in pension plans that are not "for the sole and exclusive benefit of the employees." Before the enactment of ERISA, courts extrapolated a set of fiduciary duties from this sketchy language. To determine if a plan was truly for the sole and exclusive benefit of the employees, courts evaluated the eligibility requirements. Plans that arbitrarily and unreasonably prevented a large number of participants from receiving benefits were found to have a "structural defect." *See Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052 (7th Cir.1987); *Ponce v. Const. Laborers Pension Trust*, 628 F.2d 537, 543 (9th Cir. 1980). A federal court may remedy the defect by ordering the trustee to reform the plan, *i.e.*, formulating a substitute provision that would meet the statutory standards. *Johnson v. Botica*, 537 F.2d 930, 937–38 (7th Cir.1976).

The Fund would have us believe that, after *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), § 302(c)(5) is a dead letter in actions for employee benefits. The Fund argues that, because ERISA "codified" the fiduciary duties that were originally read into § 302(c)(5), plaintiffs' exclusive cause of action rests under ERISA. We disagree. The Court in *Firestone* explicitly limited its analysis to "the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." *Id.* at 108, 109 S.Ct. at 953. Nothing in the Court's reasoning compels this court to transform an action under § 302(c)(5) into an ERISA claim. Indeed, the Ninth Circuit recently rejected a similar contention, noting that the

> argument that ERISA preempts the [LMRA] on pension issues is ... untenable. Both the Supreme Court and this court have recognized that the [LMRA] provisions parallel the ERISA provisions and that trustees must meet the requirements of each. Where Congress intended ERISA to repeal or supersede other laws, state or federal, it said so. But it said nothing about section 302(c)(5). ERISA was not to affect any federal laws not specifically mentioned, and it does not preempt [an LMRA] claim.

*Phillips v. Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509, 514 (9th Cir.1991) (quoting *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Indus.*, 703 F.2d 386, 391 (9th Cir.1983)). Accordingly, we turn to the merits of plaintiffs' LMRA claim.

"Courts are extremely reluctant to substitute their judgments for the judgments of trustees and will do so only if the actions of the trustees are not grounded on any reasonable basis." *Ponce*, 628 F.2d at 542. When a plaintiff does not challenge the eligibility requirement itself, but rather points to disparate treatment among participants, a court will interfere only if the enforcement of the rule is "arbitrary or capricious." *Phillips*, 944 F.2d at 515. As noted by the plaintiffs, this standard of review is the same standard that governed the above discussed ERISA claims (Counts I and II).

**998**

The burden remains with the plaintiffs in the first instance to show that the unequal treatment between them and the CSX and UPS employee groups was arbitrary or capricious. *See Tafoya v. Western Conference of Teamsters Pension Trust Fund,* 909 F.2d 344, 348 (9th Cir.1990). As discussed *supra* subsection III(D), Central States has set forth satisfactory reasons for treating the various employee groups differently. Plaintiffs have offered no evidence to undermine the Fund's determination or show that its actions were arbitrary or capricious. Once again, to the extent that plaintiffs' attempts to gain discovery materials were unsuccessful, that eventuality is irrelevant to the instant motion for summary judgment in the absence of a timely motion to compel. Without any evidence indicating that the trustees' action in this case was arbitrary or capricious, plaintiffs' claim under § 302(c)(5) of the LMRA must fall.[9] Consequently, we grant summary judgment against plaintiffs on Count III of their amended complaint.[10]

IV. Conclusion

For the reasons as set forth above, plaintiffs' motion for class certification is denied, and Central States' motion for summary judgment is granted as to all four counts of the amended complaint. It is so ordered.

---

9. In addition, plaintiffs' failure to proffer evidence sufficient to establish the deprivation of a vested right, *see supra* subsection III(D), is equally fatal to the present structural defect claim.

10. As we grant summary judgment in favor of Central States on the merits of each of plaintiffs' claims, we have no occasion to address the Fund's laches argument.