Earl FULLER, John Gustke, Robert Rawlings, William Varney, Donald Armbruster, Robert Butler, Maynard Brandt, and Harold Messacar, Plaintiffs,

v.

FRUEHAUF TRAILER CORPORATION, Defendant.

No. 94–72333.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 13, 1996.

Alan M. Sandals, Philadelphia, PA, Charles Gottlieb, Southfield, MI, for plaintiffs.

James A. Rydzel, Cleveland, OH, Joseph M. Fischer, Birmingham, MI, for defendant.

## *OPINION AND ORDER REGARDING PLAINTIFFS' MOTION FOR CLASS ACTION CERTIFICATION*

ROSEN, District Judge.

### I. *INTRODUCTION*

Plaintiffs, retired salaried employees of Defendant Fruehauf Trailer Corporation ("Defendant"), commenced this action on June 15, 1994, alleging that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to provide post-retirement medical benefits at company expense.[1]

---

**1.** By Opinion and Order dated March 29, 1996, this Court granted Plaintiffs' motion to amend their complaint. On April 12, 1996, Plaintiffs filed their amended complaint, adding claims that Defendant violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and that Defendant breach-

Plaintiffs now seek certification of a class consisting of all those who are participants or beneficiaries of Defendant's Salaried Retiree Medical Plan (the "Plan") by virtue of a retirement occurring between January 1, 1979, and October 31, 1989. Plaintiffs estimate that this class includes over 1,200 members.

Although Defendant issued various Plan documents over the course of this ten-year period, Plaintiffs contend that all such documents, particularly when viewed in light of oral representations made by Defendant's authorized employees, uniformly promised that retirees would be provided lifetime medical benefits at no cost. Thus, when Defendant curtailed Plaintiffs' medical benefits by announcing on October 31, 1989, that retirees would henceforth be required to pay a portion of the cost of the Plan, Plaintiffs assert that this action constituted a breach of the Plan and of the fiduciary duties Defendant owed to its retirees.

Defendant vigorously opposes Plaintiffs' motion for class certification. Defendant argues that each putative class member's purported entitlement to lifetime medical benefits rests upon a different set of Plan documents, as well as unique and individualized oral assurances. Thus, according to Defendant, each retiree's claim to lifetime medical benefits would require a separate inquiry, making a class action inappropriate.

A hearing was held on this matter on August 8, 1996. Having considered the arguments advanced by counsel at that hearing, and having reviewed the materials submitted by the parties and the relevant case law, the Court is now prepared to rule on Plaintiffs' motion. For the reasons set forth below, the Court grants Plaintiffs' motion for class action certification. Accordingly, the Court hereby orders that a class be certified pursuant to Federal Rule of Civil Procedure 23(b)(2) with respect to all three counts of Plaintiffs' amended complaint. However, as explained below, the Court further orders that each putative class member be provided with notice and an opportunity to opt out of the certified class.

ed additional fiduciary duties owed to Plaintiffs

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

The named Plaintiffs in this action are retired salaried employees of Defendant Fruehauf Trailer Corporation ("Defendant"). Although Defendant had provided medical benefits to its active salaried employees for several years, this program was extended to include retired salaried employees in 1979. All of the named Plaintiffs retired after 1979; accordingly, upon their retirement, all were eligible for the retiree medical benefits provided by Defendant.

The details of Defendant's Salaried Retiree Medical Plan (the "Plan") are set forth or referred to in various documents and other materials before the Court. Specifically, the parties cite six sources that arguably bear upon the terms of the Plan: (1) the underlying health insurance policy; (2) ERISA-mandated summary plan descriptions; (3) statements of benefits sent to retirees; (4) memoranda describing various early retirement programs offered by Defendant; (5) Defendant's Industrial Relations Manual; and (6) oral representations allegedly made by certain of Defendant's officers and supervisors. Each of these sources is described in greater detail below.

### A. *Documents Bearing on the Terms of Defendant's Salaried Retiree Medical Plan*

The Plan at issue in this case is comprehensively described in a health insurance policy issued by Connecticut General Life Insurance Company. The first such policy was issued in 1977, and includes language providing that "[t]he Policyholder [*i.e.*, Defendant] may discontinue this policy as of any Premium Due Date by giving the Insurance Company written notice in advance of that date." The 1977 policy further stated that employee coverage would automatically lapse as of the date the policy itself was discontinued. A superseding policy, issued in 1989 but effective as of July 1, 1987, includes similar language regarding Defendant's right to cancel and the effect such a cancellation would have on its employees.

under ERISA.

Next, during the 1979–1989 time period of relevance to this action, Defendant issued several "summary plan descriptions" ("SPDs") as required under ERISA. Some of these SPDs described Defendant's Group Insurance Plan for Salaried Employees (the "active SPDs"),[2] while two others expressly described the retiree medical benefits provided under Defendant's Group Insurance Plan for Salaried Retired Employees (the "retiree SPDs").[3]

Although the active SPDs vary in certain respects, each of these SPDs includes language reserving Defendant's right to modify or terminate the Plan at any time. For example, the 1985 active SPD states that "[t]he Company has the right to change or discontinue the Plan at any time," and further provides that "[i]f the Plan is terminated, all coverage would cease immediately." However, the paragraph in the 1983 active SPD that reserves Defendant's right to change or discontinue the Plan also states that "[t]he Company intends to continue the Plan indefinitely."

Several of the active SPDs also describe an employee's entitlement to benefits upon retirement. For example, the 1983 active SPD provides:

> If you retire from Active Service while your insurance is still in effect and on or after January 1, 1979 under the Salaried Retirement Plan, your Medical Insurance will continue for the rest of your life. Insurance for your dependents will also continue as long as they remain eligible. The company pays the full cost of this insurance.

The 1985 active SPD alters this paragraph somewhat, providing that medical insurance will continue "pursuant to the terms of the plan," rather than "for the rest of your life." However, the 1985 active SPD continues to promise that Defendant will pay the "full cost" of this medical insurance.

The retiree SPDs, like the active SPDs, reserve to Defendant the right to modify or terminate the Plan. Furthermore, the 1985 retiree SPD expressly states that "coverage would cease immediately" in the event that the Plan is terminated. However, the 1979 retiree SPD provides that the medical insurance of a surviving spouse of a deceased retiree "will be continued without cost until the surviving spouse remarries," and that "[t]he cost of the plan is paid by the company."

Plaintiffs next cite the annual statements of benefits sent to retirees from 1979 to 1983 as supporting their view of the terms of the Plan. These statements advised each recipient that, upon his or her retirement as a salaried employee, "the Company will pay the costs of the Group Retiree Medical Insurance Plan coverage for you and your eligible dependents."

Apart from these generally applicable medical insurance benefits, Defendant offered its salaried employees various early retirement packages between 1982 and 1988. In order to announce and explain these offers, Defendant prepared memoranda outlining its Special Early Retirement Programs ("SERPs"). The SERP memoranda issued in 1982, 1986, and 1987 all stated that "Special Early retirees and their eligible dependents are entitled to Company paid Group Medical Insurance." The SERP memorandum issued in 1988 provided that "[a]s with other types of retirement, participants retiring under the Accrued Retirement Program and their eligible dependents are entitled to the Retiree Medical Insurance."

Finally, Plaintiffs point to language in Defendant's internal Industrial Relations Manual, issued in 1981 and used from April 1, 1981, forward. The section of this manual captioned "Continuation of Group Medical Insurance For Salaried Employees Upon Retirement" provides that "[i]f you retire from Active Service under the Salaried Retirement Plan on or after January 1, 1979, your Medical Insurance will be continued for you

---

**2.** In particular, Plaintiffs' brief in support of their motion for class certification cites three such SPDs, issued in November 1981, December 1983, and September 1985. Defendant states that additional SPDs describing medical benefits for active employees were issued in 1979 and 1987.

**3.** The SPDs describing retiree medical benefits were issued in January of 1979 and in 1985.

and your eligible dependents." That same section later discusses medical benefits for surviving spouses of deceased retirees, stating that "[t]his coverage includes eligible dependents and will continue for life unless your surviving spouse remarries."

### B. Oral Representations Allegedly Bearing on the Terms of Defendant's Salaried Retiree Medical Plan

Apart from the written materials described above, Plaintiffs contend that certain oral representations made by Defendant officials in positions of authority also bear upon the terms of the Plan. In essence, Plaintiffs claim that statements made to the named Plaintiffs evince Defendant's uniform practice to assure its employees that they would be provided medical benefits for life at company expense.

Plaintiffs first cite the deposition testimony of Donald Armbruster, one of the named Plaintiffs in this action. Armbruster apparently was charged with the responsibility of informing other Defendant employees about their medical benefits.[4] At his deposition, he testified that his supervisor, Bob Hawkins, instructed him to tell prospective retirees that they would be provided medical insurance for life at company expense. Armbruster further testified that he was given a "green slip,"[5] which included names of employees to whom Armbruster was supposed to speak, and also summarized the benefits of Defendant's 1988 early retirement program, including the assurance of lifetime medical insurance. Armbruster also stated that he told potential candidates for hire that their medical benefits upon retirement would continue for life at company expense.

Moreover, Armbruster testified that his own early retirement under the 1988 SERP was influenced in part by a discussion he had with Thomas Nanos, Defendant's Vice President of Sales and Marketing, in which Nanos failed to correct Armbruster when he cited

lifetime medical benefits as a reason for his decision to retire. Finally, Armbruster recounted other meetings with high-ranking Defendant officers at which it was stated that the company offered medical benefits for life.

Similarly, another named Plaintiff, Robert Butler, Defendant's Director of Insurance and Risk Management, testified at his deposition that various high-ranking Defendant employees represented to him on several occasions that Defendant intended to continue retiree medical benefits for life. For example, Butler testified that through 1986, he was told by Richard Helwig, Vice President for Industrial Relations, that human relations counsellors should advise employees that their health insurance would be provided for life at company expense. Butler further stated that, consistent with these instructions, he advised retirees at their exit interviews that their medical insurance would continue for life.

Moreover, Butler, much like Armbruster, testified that his own decision to retire under the 1988 SERP followed a conversation with a high-ranking Defendant official; in Butler's case, this official was Richard Darke, Defendant's Vice President and General Counsel. According to Butler, he was advised by Darke that his medical insurance could never be taken away from him. However, Defendant points to Butler's further, and arguably inconsistent, testimony that he was specifically instructed in 1985 to amend the 1983 active SPD by removing its "for life" language, and that this change was motivated by a lawsuit brought by retirees of a subsidiary of Defendant charging a breach of a promise to provide lifetime health insurance at company expense.

Finally, the remaining named Plaintiffs, with one exception, cite statements by their supervisors, or other Defendant personnel in positions of authority, that their retiree medical benefits would continue for life at company expense.[6] Four of these Plaintiffs—John

---

**4.** The record does not indicate precisely what position Armbruster held, but only that he was provided information about benefits that he was expected to pass along to other employees.

**5.** Armbruster has not produced this "green slip"; he testified at his deposition that he threw it away.

**6.** At his deposition, Plaintiff Harold Messacar was unable to cite any particular statement that

Gustke, Earl Fuller, William Varney, and Robert Rawlings—retired under one of Defendant's SERPs. The remaining two named Plaintiffs, Maynard Brandt and Harold Messacar, retired under Defendant's standard retirement program.[7]

### C. *The Recent Changes to Defendant's Salaried Retiree Medical Plan*

In 1988, Defendant apparently began to suffer various financial hardships. Accordingly, as part of an overhaul of all of its benefits programs, Defendant sent letters to its retirees on October 31, 1989, announcing that effective January 1, 1990, they would be required to pay a portion of the costs of their medical coverage.[8] In addition, future retirees were advised that they would be entitled to only a fixed-dollar-amount contribution to their medical insurance.

Over the next four years, Defendant sent four additional letters to its retirees, stating that Plan costs had increased and that the retirees therefore would be required to pay increased premiums in order to continue their health insurance. Finally, effective June 1, 1994, Defendant terminated its existing Plan for retirees over the age of 65,[9] and switched to a "Medi–Gap" medical insurance program. Under this program, offered as part of the American Association of Retired Persons' Group Health Insurance Program, Defendant paid a fixed contribution of $10 per month toward its retirees' health insurance premiums. Defendant also modified its prescription drug program, requiring retirees to pay 40 percent of the cost of each prescription, with a $150–per–year deductible and a $3 co-pay per prescription.

### D. *Defendant's Alleged Deviation from the Cost–Sharing Formula in the Modified Plan*

In addition to contending that Defendant unlawfully modified the Plan, Plaintiffs also

assert that Defendant committed a RICO violation and breached its fiduciary duties under ERISA by passing on "phantom" costs to its retirees pursuant to the modified Plan. The letters sent by Defendant to its retirees on October 31, 1989, apart from advising retirees that they would be required to bear a portion of the costs of the Plan, also stated a cost-sharing formula. Under this formula, Defendant would cover increased health care costs up to the rate of increase in the Consumer Price Index ("CPI"), while the retirees would be required to pay any excess increases.

Plaintiffs' amended complaint alleges, however, that subsequent mailings from Defendant to its retirees represented that health care costs had increased beyond the rate of increase in the CPI, without also mentioning that changes in Plan coverage had led to a net decrease in Plan costs. Specifically, the amended complaint quotes passages from letters sent to Defendant's retirees in the fall of 1990, on January 7, 1992, on November 19, 1992, and on November 18, 1993, each of which states that health care premiums were being increased pursuant to the formula outlined the October 31, 1989, letter announcing the modified Plan. According to Plaintiffs, internal company workpapers reveal that the increased premiums imposed upon the retirees were not dictated by corresponding actual increases in Plan costs. Thus, Plaintiffs assert that Defendant knowingly deviated from its stated cost-sharing formula, and that Defendant's subsequent mailings therefore were false and misleading in stating that the 1989 cost-sharing formula continued to govern calculation of health care premiums.

### E. *Procedural Background*

Plaintiffs filed their initial complaint in this action on June 15, 1994, alleging that Defen-

---

led him to believe he would be provided medical benefits for life upon his retirement.

**7.** Thus, out of the eight named Plaintiffs, six retired under a SERP, while two retired under Defendant's standard program.

**8.** Plaintiffs' amended complaint, filed April 12, 1996, includes two additional claims, arising un-

der RICO and ERISA respectively, charging that Defendant failed to adhere to the cost-sharing formula stated in this October 31 letter to retirees.

**9.** Coverage for retirees under 65 years of age continued pursuant to the Plan as modified in 1990.

dant violated ERISA by modifying its Salaried Retiree Medical Benefits Plan in 1990 so that retirees were no longer provided health insurance at company expense. Following the Court's March 29, 1996, Opinion and Order granting their motion to amend, Plaintiffs filed an amended complaint on April 12, 1996. This amended complaint includes two additional claims, brought under RICO and ERISA respectively, stemming from Defendant's alleged deviation from the cost-sharing formula stated in its October 31, 1989, letter to its retirees.

Presently before the Court is Plaintiffs' January 10, 1996, motion for class action certification pursuant to Federal Rule of Civil Procedure 23.[10] Plaintiffs describe the proposed class as follows:

> All persons who as of October 31, 1989 were participants or beneficiaries of [D]efendant's medical plan for retired salaried employees whose participation is based on a retirement occurring between January 1, 1979 and October 31, 1989.

Defendant filed a response in opposition to Plaintiffs' motion on February 5, 1996, and Plaintiffs in turn replied to this response on February 24, 1996. More recently, the parties have filed supplemental briefs addressing the class certification issue in the context of the two additional claims asserted in Plaintiffs' amended complaint. Finally, the Court conducted a hearing on this motion on August 8, 1996.

## III. *ANALYSIS*

### A. *The Requirements of Rule 23*

Federal Rule of Civil Procedure 23 governs this Court's consideration of Plaintiff's motion for class certification. That Rule provides, in pertinent part:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

>> (1) the prosecution of separate actions by or against individual members of the class would create a risk of

> \* \* \* \* \* \*

>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

>> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

>> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23.

 As the language of the Rule itself makes clear, a proposed class action must qualify under one of the three subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). However, the Rule itself further provides that the four prerequisites of Rule 23(a) must first be satisfied; absent this showing, a court need not categorize a proposed class action under Rule 23(b). It is clear that Plaintiffs, as the parties seeking class certification, bear the burden of satisfying the requirements of Rule 23. *Reid v. White Motor Corp.,* 886 F.2d 1462, 1471 (6th

---

10. In addition, Defendant has pending before the Court a motion for summary judgment. However, at a conference held on August 24, 1995, the Court indicated its preference for resolving the class certification issue before addressing Defendant's motion.

Cir.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990).[11]

Turning, then, to the prerequisites set forth in Rule 23(a), these four elements have been given the shorthand designations of "numerosity, commonality, typicality, and adequacy of representation." *General Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). Plaintiffs assert that the "numerosity" prerequisite is satisfied by virtue of a class membership numbering between 1256 and 1468, and Defendant does not dispute that this putative class is sufficiently large to satisfy the "numerosity" element of Rule 23(a). Similarly, to the extent that the "adequacy" element calls for consideration of the ability of counsel to represent the class, Defendant does not challenge the credentials and prior class action experience of Plaintiffs' two attorneys, Charles Gottlieb and Alan Sandals. Neither does Defendant suggest that the interests of the named Plaintiffs might somehow be adverse to those of the unnamed members of the class. *See Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Rather, the key points in dispute in the instant matter involve the "commonality" and "typicality" elements of Rule 23(a). Accordingly, the Court hereafter focuses on these prerequisites.

**B.** ***Plaintiffs Have Satisfied the "Commonality" Prerequisite of Rule 23(a) With Respect to Count One of Their Amended Complaint.***

■ In order to satisfy the "commonality" element of Rule 23(a), Plaintiffs must identify "questions of law or fact common to the class." Fed.R.Civ.P. 23(a). The Rule "does not require that all questions of law or fact raised in the litigation be common." *Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1015 (W.D.Mich.1987). Rather, in *Rodriguez,* Judge Enslen of the Western District of Michigan explained:

> Where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected. Moreover, the clear language of the rule indicates that a common question of either fact *or* law will satisfy the requirement.

*Rodriguez,* 672 F.Supp. at 1015; *see also Forbush v. J.C. Penney Co.,* 994 F.2d 1101,

11. Defendant somewhat misleadingly speaks of the "proof" that Plaintiffs must offer in order to satisfy Rule 23(a), implying that Plaintiffs may not principally rely on the allegations in their pleadings. Although it is certainly true that this Court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)," *General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982), and that this evaluation may require the Court to "probe behind the pleadings before coming to rest on the certification question," *Falcon,* 457 U.S. at 160, 102 S.Ct. at 2372, it is also true that this Court must not "confus[e] evidence ... on the merits with the altogether different question of whether there are facts alleged which would justify the case going to trial as a class action." *Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *see also Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1201 (6th Cir.1974) ("[W]hen determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits."); *Walther v. Pension Plan for Salaried Employees of Dayton–Walther Corp.,* 880 F.Supp. 1170, 1177 (S.D.Ohio 1994) ("In determining whether to certify a class, a court is prohibited from considering the merits of the action."); *Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985, 989 (N.D.Ill.1991) ("In evaluating the motion for class certification, the allegations made in support of certification are taken as true, and we do not examine the merits of the case.").

Thus, for purposes of resolving the instant motion, the Court considers "evidence" or "proof" only to the extent that it bears upon the requirements set forth in Rule 23. *See Weathers,* 499 F.2d at 1200 (noting that "parties should be afforded an opportunity to present evidence on the maintainability of [a] class action"). In particular, the Court will focus primarily on the allegations set forth in Plaintiffs' pleadings, but will also, when necessary, consult the present evidentiary record to better ascertain the precise nature of Plaintiffs' allegations and claims. This approach best reconciles the dual instructions of Rule 23 that courts should make class action determinations "[a]s soon as practicable after the commencement of an action," yet should also amend class certification orders in light of subsequent developments in the litigation. *See* Fed. R.Civ.P. 23(c)(1); *see also Falcon,* 457 U.S. at 160, 102 S.Ct. at 2372.

1106 (5th Cir.1993) ("[T]he commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" (citation omitted)).

■ In the instant matter, Defendant correctly points out that Plaintiffs have done a rather poor job of establishing commonality. In the brief in support of their motion, Plaintiffs baldly assert that the retirees' claims against Defendant "clearly do present ... common questions," and they then cite three examples. These purported "examples," however, merely restate the legal theories asserted in Plaintiffs' complaint.[12] It plainly begs the question to contend that commonality is satisfied simply by citing the "common" question whether each class member is entitled to prevail under the legal theories pleaded in a complaint. The commonality element of Rule 23(a) clearly contemplates that a party seeking class certification will identify *specific* questions of fact or law that are common to the claims of each class member.

■ Notwithstanding Plaintiffs' weak showing on this point, the Court has no difficulty identifying certain questions of fact and law in common among all of the putative class members. First, because Plaintiffs cite language from various active SPDs as bearing on the terms of the Plan covering retirees, the Court necessarily will have to decide whether the active SPDs are indeed relevant to the retirees' claims. Next, although various SPDs have been placed into the evidentiary record, each of them expressly reserves to Defendant the right to modify or terminate the Plan. Thus, the Court will be called upon to decide whether these reservation clauses vitiate other language in the SPDs, as well as language in other documents and in oral representations allegedly made to the named Plaintiffs, suggesting that medical benefits would be provided for life at company expense. In addition, the Court will have to decide the question—evidently a mixed question of fact and law—whether the oral representations allegedly made by Defendant personnel in positions of authority were sufficiently uniform and pervasive that they might bear upon interpretation of the terms of the Plan.[13]

■ Despite these common questions, Defendant contends that commonality is lost by virtue of the "profusion of sources" upon which Plaintiffs rely to sustain their claims. For example, Defendant points out that the various named Plaintiffs retired under the terms of different SERPs or SPDs; thus, there is no single document that contains all of the alleged promises upon which Plaintiffs base their claims. The Court finds, however, that these multiple sources do not defeat commonality under Rule 23(a). Rather, "[f]actual identity between the plaintiff's claims and those of the class he seeks to represent is not necessary." *Senter,* 532 F.2d at 524. Common questions are present across varying materials so long as "the information supplied to [Defendant's retirees] was consistent on key points." *Sprague v. General Motors Corp.,* 843 F.Supp. 266, 272 (E.D.Mich.1994);[14] *see also Forbush,* 994

---

12. For instance, one of Plaintiffs' alleged "common questions" is "whether [D]efendant violated the terms of the Plan documents in imposing on plaintiffs a charge for their Plan participation."

13. This enumeration of common questions does not necessarily exhaust the field of all common issues of law or fact in this case.

14. Indeed, the *Sprague* court, in a case involving claims somewhat similar to those asserted by Plaintiffs here, certified a class of early retirees despite their reliance on a "variety of forms" that "var[ied] over both time and location" and "d[id] not contain uniform information." *Sprague,* 843 F.Supp. at 272.

After the August 8 hearing on Plaintiffs' motion for class certification, the Sixth Circuit Court of Appeals issued an opinion in *Sprague,* affirming the District Court's rulings in part and reversing in part. *See Sprague v. General Motors Corp.,* 92 F.3d 1425 (6th Cir.1996). Upon reviewing the Sixth Circuit's opinion, this Court finds that it affirms those aspects of the District Court's rulings that are pertinent to the class certification motion presently before this Court. In particular, the Sixth Circuit rejected General Motors' "profusion of sources" argument against commonality, and instead found that the District Court had properly certified a class of early retirees. 92 F.3d at 1430–33. Indeed, the Sixth Circuit further instructed the District Court to reconsider the general retirees' motion for class certification upon remand. 92 F.3d at 1432–33. Thus, the Court finds that the recent *Sprague* decision, despite its clear import in deciding the *merits* of this action, does not alter the Court's

F.2d at 1106 (finding the commonality requirement satisfied "despite the fact that four different pension plans are involved"). *But see Walther v. Pension Plan for Salaried Employees of Dayton–Walther Corp.,* 880 F.Supp. 1170, 1178 (S.D.Ohio 1994) (finding commonality not satisfied "[i]n the absence of at least one common written document distributed to all members of the class").

In this case, Plaintiffs have alleged a single "course of conduct" that affects the entire class of Defendant's salaried retirees. While conceding that several documents with varying language were issued during the time period of relevance to this matter, Plaintiffs contend that these documents consistently promised lifetime medical benefits at no cost, particularly when viewed in light of the oral representations of Defendant's officers. In response, and as one of the grounds for its motion for summary judgment, Defendant argues that the language of these documents, even if viewed as evincing a single "course of conduct," merely stated Defendant's then-present *intention,* as opposed to a binding *promise,* to continue paying the cost of medical insurance for its retirees. Although Plaintiffs assert other theories in support of their claims, and although Defendant asserts other defenses, this theory of the case alone is replete with common questions of law and fact, since it places all of the putative class members on the same legal footing. *See Forbush,* 994 F.2d at 1106 (finding class certification appropriate where the named plaintiff challenged a "general practice"); *Walther,* 880 F.Supp. at 1178 (noting that commonality is satisfied by an allegation that the members of the class have all been affected by a "general policy" which is "the focus of the litigation").[15] Accordingly, the Court concludes that Plaintiffs have satisfied the prerequisite of commonality under Rule 23(a).[16]

### C. Plaintiffs Have Satisfied the "Typicality" Prerequisite of Rule 23(a) With Respect To Count One of Their Amended Complaint.

Under the "typicality" prong of Rule 23(a), the Court must determine "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). As the *Falcon* Court explained:

The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13.

Although involving overlapping considerations, this Court views the commonality and typicality prerequisites of Rule 23(a) as focusing on two distinct questions. Under the commonality prong, a court must ask whether there are sufficient factual or legal questions *in common* among the class members' claims to make class certification economical and otherwise appropriate. In contrast, under the typicality prong, a court

resolution of the instant motion for class certification.

**15.** Indeed, the Court notes that one of the grounds asserted in support of Defendant's motion for summary judgment is *premised* on commonality across all retirees. Namely, Defendant contends that no binding promise of lifetime medical benefits was made to *any* retiree, as evidenced by the language in each SPD reserving to Defendant the right to modify or terminate the Plan.

**16.** Moreover, to the extent that the putative class members' claims may vary depending, for exam-

ple, on the SERP under which they retired, this concern can be addressed by dividing the class into appropriate subclasses. *See* Fed.R.Civ.P. 23(c)(4)(B); *see also Sprague,* 843 F.Supp. at 270 (noting that a class of salaried early retirees had been divided into four subclasses).

At this juncture, the Court finds that the putative class is most appropriately divided into two subclasses: general retirees and SERP retirees. Further subclasses may be identified as necessary upon continued development of the evidentiary record.

must ask whether, despite the presence of common questions, each class member's claim involves so many *distinct* factual or legal questions as to make class certification inappropriate. *See Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985, 990 (N.D.Ill. 1991) ("[M]erely pointing to common issues of law is insufficient to meet the typicality requirement when the facts required to prove the claims are markedly different between class members."). In short, commonality focuses on similarities, while typicality focuses on differences.

The Supreme Court's decision in *Falcon* illustrates this distinction. In that case, the named plaintiff, who claimed he had been passed over for a promotion because of his national origin, sought certification of a class of all Mexican–Americans who had been unfavorably treated by the defendant by virtue of its allegedly discriminatory employment practices. 457 U.S. at 149–51, 102 S.Ct. at 2366–67. Although recognizing that the racially discriminatory practice alleged by the named plaintiff "is by definition class discrimination," the *Falcon* Court noted that the named plaintiff's proof of his own claim would not necessarily establish the existence of a class of persons who have been harmed by the same or a similar discriminatory practice. 457 U.S. at 157, 102 S.Ct. at 2370. The Court explained:

> For [the named plaintiff] to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that [he] was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of [his employer's] promotion practices, (2) that [the employer's] promotion practices are motivated by a policy of ethnic discrimination that pervades [a particular company location], or (3) that this policy of ethnic discrimination is reflected in [the employer's] other employment practices, such as hiring, in the same way it is manifested in the promotion practices. These additional inferences demonstrate the tenuous character of any presumption that the class claims are "fairly encompassed" within [the named plaintiff's] claim.

457 U.S. at 157–58, 102 S.Ct. at 2371.

Defendant argues that a similar problem undermines Plaintiffs' effort to certify a class in this case. Specifically, Defendant points out that each of the eight named Plaintiffs allegedly relied on a different set of oral representations by different Defendant officials in reaching his conclusion that Defendant would provide lifetime medical benefits at company expense. Thus, in Defendant's view, a particular named Plaintiff could establish his claim that he had been promised such benefits without showing, or even raising an inference, that other retirees had received similar promises. It follows that the claims of the named Plaintiffs are not "typical" of the putative class claims. *See Spencer,* 778 F.Supp. at 990–91 (rejecting class certification for want of typicality where "oral representations allegedly were communicated to 27 different groups of . . . employees, the substance and presentation of which most likely varied from group to group").

Although Defendant's argument carries some weight, the Court finds that it ultimately does not warrant denial of Plaintiffs' motion for class certification.[17] First, as Defendant recognizes, Plaintiffs address this "typicality" problem by contending that the various oral representations made to the named Plaintiffs, taken together with the statements included in various documents, collectively demonstrate Defendant's policy and consistent practice of assuring its retirees that their medical benefits would continue for life. In effect, Plaintiffs assert that these oral representations, when viewed in their broader context, were uniform in one key and material respect: they consistently promised lifetime medical insurance at company expense. *See Spencer,* 778 F.Supp. at 991 n. 5 (recognizing that "standardized" or

---

**17.** Rather, as explained later in this Opinion, the Court believes that this concern is best addressed by affording putative class members the opportunity to opt out of the class.

"uniform" oral communications may support class certification).

While the Court would be extremely reluctant to infer a company-wide practice from a few stray remarks, Plaintiffs' case does not appear to depend upon such an exercise in extrapolation. Rather, it appears that Plaintiffs' allegations, if backed by evidence, might well permit an inference that Defendant systematically represented to its prospective retirees that the company would continue to provide medical insurance.[18] In particular, the Court notes that two named Plaintiffs, Armbruster and Butler, who themselves apparently held positions of some authority, both testified at their depositions that they were instructed by higher-ranking Defendant officers to advise *other* employees that their medical benefits would continue for life. Thus, the instant matter is distinguishable from those cases refusing to certify classes based solely upon individualized oral communications from autonomous supervisors. *See, e.g., Grimes v. Pitney Bowes Inc.*, 100 F.R.D. 265, 270 (N.D.Ga.1983).[19]

More importantly, the Court believes that Defendant misconceives one of the purposes for which Plaintiffs have alleged and offered evidence of oral representations by Defendant officials. Plaintiffs need not rest solely upon the inference, based on the fact that a few retirees were given oral assurances that Defendant would provide lifetime medical benefits, that *all* retirees were given such oral assurances. Rather, Plaintiffs point to these oral communications as part and parcel of Defendant's overarching representation that lifetime medical benefits would be provided to its retirees. Thus, in Plaintiffs'

view, oral communications from Defendant's officials serve a "gap-filling" function: they resolve any ambiguities that might arise from varying language in the written documents that purport to describe the Plan.

Both the Sixth Circuit and another court in this District have recognized this use of oral communications in ERISA class actions. First, in *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298–1300 (6th Cir.1991), the Sixth Circuit held that the plaintiff class could rely on oral representations by the defendant company's officials in support of their ERISA claim. The plaintiffs, a class consisting of 33 retirees of the defendant corporation, argued that their former employer was equitably estopped from denying retirement insurance benefits because of representations by various company officials that they would receive such benefits if they opted to retire early. 944 F.2d at 1292–93, 1298. The district court agreed, finding that the retirees had detrimentally relied on these assurances by company officials. 944 F.2d at 1298.

On appeal to the Sixth Circuit, the defendant employer argued that ERISA was incompatible with the theory of equitable estoppel because of the statutory requirement that welfare plans be in writing. 944 F.2d at 1299. The *Armistead* court disagreed, distinguishing the present case from an earlier case involving an ERISA pension plan that had rejected an estoppel theory:

> This reasoning [from the earlier case rejecting estoppel] applies primarily to cases involving pension plans and is much less cogent when welfare benefit plans are at issue. The reason is that pension bene-

---

**18.** Of course, the Court need not, and does not, assess the merits of this theory of the case at this juncture.

**19.** Plaintiffs further contend that, apart from the allegations in their complaint and the deposition testimony of the named Plaintiffs, the responses to the questionnaires sent out to potential class members indicate that Defendant systematically represented to its retirees that lifetime medical benefits would be provided at company expense. Plaintiffs state that, of the 471 tabulated responses (over 1,400 questionnaires were mailed, 602 were returned, and Plaintiffs deemed 131 responses unreliable for various reasons), 232, or 49 percent, claimed to have received oral assur-

ances of lifetime benefits from Defendant officials.

Defendant responds that the results of the questionnaires should be rejected because they are not "evidence." This argument reflects Defendant's misconception, discussed earlier, about the sort of "showing" contemplated under Rule 23. The questionnaires need not be admissible evidence in order to have a bearing upon the Court's determination whether a class action is maintainable in this case. Rather, for purposes of the instant motion, it is enough that the responses fortify Plaintiffs' allegation that Defendant systematically assured its retirees that medical insurance would be provided for life.

fits are typically paid out of funds to which both employer[ ] and employee contribute. Contributions and pay-outs are determined by actuarial assumptions reflected in the terms of the plan. If the effective terms of the plan may be altered by transactions between officers of the plan and individual plan participants or discrete groups of them, the rights and legitimate expectations of third parties to retirement income may be prejudiced.

This is not necessarily the case with insurance benefit plans. Typically the employer pays policy premiums out of its own assets, perhaps with a contribution from the employee. The actuarial soundness of a fund, which might be depleted if strict vesting and accrual requirements were not observed, is not an issue where a plan of this description is involved. We conclude therefore that in such a case, the purpose of Congress in enacting [the ERISA provision requiring that welfare plans be in writing] would not be frustrated by recourse to estoppel principles, which are generally applicable to all legal actions. 944 F.2d at 1300. Accordingly, the court affirmed the lower court's ruling that the defendant corporation was equitably estopped from denying retirement insurance benefits to the plaintiff class. 944 F.2d at 1300.

Next, in *Sprague v. General Motors Corp.*, 843 F.Supp. 266 (E.D.Mich.1994), Judge Feikens of this District relied on *Armistead* in determining that oral representations to employees can serve to modify an ERISA retirement benefits plan. Although noting "the importance, for both employer and employee, of the predictability provided by written plans," Judge Feikens nevertheless concluded that "if the terms of a particular plan are unclear, extrinsic evidence (including oral statements) may be considered." 843 F.Supp. at 305. The *Sprague* court reasoned that such a rule is necessary to protect those employees who detrimentally rely on an em-

ployer's promise that their welfare benefits will vest upon retirement. 843 F.Supp. at 306; *see also Sprague v. General Motors Corp.*, 857 F.Supp. 1182, 1185–88 (E.D.Mich. 1994) (reaffirming the availability of an estoppel theory under ERISA in light of Sixth Circuit precedents such as *Armistead* ).[20]

For purposes of the present motion, the Court need not determine the precise contours of an estoppel theory under ERISA, nor whether Plaintiffs' allegations would, if proven, be sufficient to prevail under such a theory. Such considerations must naturally await adjudication under a more complete evidentiary record. For purposes of resolving the instant motion for class certification, it is enough that the case law demonstrates that oral representations to a particular named Plaintiff might bear upon issues beyond the narrow question whether *that particular Plaintiff* was promised lifetime medical benefits. If oral representations served only such a limited and specific purpose, and if those representations formed a substantial part of each named Plaintiff's claimed entitlement to lifetime benefits, the result would be a splintering of Plaintiffs' purported class. However, because the alleged oral representations might potentially operate to estop Defendant in a broader fashion, the Court finds that typicality is not defeated by virtue of the named Plaintiffs' reliance on oral representations.

Finally, Defendant argues that Plaintiffs' estoppel claims cannot satisfy the typicality prerequisite, since the doctrine of estoppel, whether equitable or promissory,[21] requires a determination whether an individual detrimentally and justifiably relied on a given representation. *See Sprague*, 857 F.Supp. at 1188–89 (describing the elements of equitable and promissory estoppel). Defendant maintains that this question of reliance must necessarily be addressed on an individual basis, thus defeating typicality.

The short answer to this contention is that both *Armistead* and *Sprague* involved appli-

---

**20.** Again, the Sixth Circuit's recent opinion in *Sprague* expressly affirmed this aspect of Judge Feikens' rulings. *See Sprague*, 92 F.3d at 1441 ("Estoppel may be a viable theory . . . as to those retirees who retired . . . under documents that

were ambiguous as to whether benefits were vested.").

**21.** In their complaint, Plaintiffs appeal to both equitable and promissory estoppel.

cation of the doctrine of estoppel, and that both were class actions. Apparently, then, there is no inherent incompatibility between class actions and claims of estoppel. Rather, *Sprague* makes clear that, under the proper set of facts, a class of retirees may be able to establish that they received uniform and unambiguous assurances upon which they justifiably and detrimentally relied. *See Sprague*, 857 F.Supp. at 1188–92.[22] The Court, therefore, concludes that Plaintiffs allegations, when combined with the additional materials before the Court, satisfy the prerequisite of "typicality" under Rule 23(a).

### D. *Rule 23(a) Is Similarly Satisfied With Respect to Counts Two and Three of Plaintiffs' Amended Complaint.*

In a supplemental brief filed on June 7, 1996, Plaintiffs request that this Court also certify a class with respect to Counts Two and Three of their recently amended complaint.[23] Plaintiffs propose that the same class description—namely, all those whose status as a participant or beneficiary of Defendant's medical plan for retired salaried employees derives from a retirement occurring between 1979 and 1989—should govern class certification under Counts Two and Three. The Court agrees, and finds that Plaintiffs have satisfied Rule 23(a) with respect to the claims newly asserted in their amended complaint.

Plaintiffs contend that the same considerations that satisfy the "numerosity" and "adequacy of representation" elements of

Rule 23(a) with respect to Count One also satisfy these prerequisites with respect to Counts Two and Three. Once again, Defendant does not dispute these contentions. Accordingly, for the reasons stated in the Court's earlier discussion concerning Count One, the Court finds that Plaintiffs' proposed class satisfies these two prerequisites.

In ·addition, the Court finds that Counts Two and Three of Plaintiffs' amended complaint raise none of the "commonality" or "typicality" concerns that are aroused by the allegations in support of Count One. In contrast to the Count One allegations, the allegations in support of Counts Two and Three do not require any sort of inference or conjecture that Defendant's conduct toward a few of its retirees somehow demonstrates the existence of a general practice. Rather, in support of Counts Two and Three, Plaintiffs allege that Defendant prepared and sent to *all* of the proposed class members a letter advising them of the cost-sharing formula Defendant would henceforth use in passing along a portion of any future increases in Plan costs. Similarly, Plaintiffs allege that each proposed class member subsequently received letters from Defendant falsely indicating that Plan costs were expected to increase, when in fact changes in Plan coverage actually led to decreased costs. In light of these uniform written statements, the concern under Count One that different class members might have received different or individualized promises of lifetime medical benefits from a "profusion of sources" is simply not present under the allegations of

---

**22.** However, *Sprague* further illustrates how difficult it is to prevail under a class-based estoppel theory. The District Court in *Sprague* found that, with respect to general as opposed to early retirees, there was neither a clear and unambiguous promise of vested health care benefits nor a showing of detrimental reliance on any such representations. *Sprague*, 857 F.Supp. at 1189. Although the Sixth Circuit reversed this ruling in part, it nevertheless agreed that there can be no viable claim of estoppel where underlying plan documents unambiguously reserve an employer's right to amend the plan. *See Sprague*, 92 F.3d at 1441.

Thus, while the elements of estoppel may be relatively easily satisfied on an individual basis, Plaintiffs here face a difficult task in establishing, notwithstanding multiple sources of information, that Defendant made a "clear and unambiguous" promise of lifetime benefits to all its retirees, and that this promise exerted an across-the-board

influence on the decisions made by those retirees. As the Court indicated at the August 8 hearing, this difficulty in establishing a classwide estoppel claim leads the Court to conclude that each potential class member must be given an opportunity to opt out of the class.

**23.** As Defendant points out, Plaintiffs' supplemental brief does not expressly request class certification with respect to Count Three. However, a proposed order accompanying Plaintiffs' supplemental brief indicates that Plaintiffs do indeed seek class certification with respect to all three of their claims. In addition, because Counts Two and Three rely on the same allegations and simply state two different theories of recovery, under RICO and under ERISA respectively, the Court views its class certification inquiry as virtually the same under either count.

Counts Two and Three. The Court concludes, therefore, that the four prerequisites of Rule 23(a) are satisfied with respect to Plaintiffs' two most recent claims.

Defendant apparently does not dispute this conclusion as such. Instead, Defendant argues that class certification with respect to Counts Two and Three would be premature, in light of the ongoing discovery pertaining to these recently asserted claims. However, Defendant utterly fails to suggest how additional discovery might bear upon the maintainability of a class action, as opposed to the substantive merits of Plaintiffs' claims in Counts Two and Three. For purposes of the instant motion for class certification, the Court need not inquire whether Plaintiffs will be able to support their most recent allegations with sufficient evidence. Rather, in order to resolve Plaintiffs' motion, it is enough that Plaintiffs have provided sufficiently detailed allegations and supporting materials to enable this Court to determine whether the requirements of Rule 23(a) are met. The Court finds that Plaintiffs have met this burden, and that Rule 23(a) is satisfied with respect to Counts Two and Three.[24]

### E. Class Certification Under Rule 23(b)(2) Is Most Appropriate in This Case, But Potential Class Members Must Be Afforded an Opportunity to Opt Out.

Having determined that Plaintiffs have satisfied the four prerequisites of Rule 23(a),

the Court must next determine whether Plaintiffs' purported class action fits within one of the three subdivisions of Rule 23(b). The briefs submitted by the parties address this question somewhat cursorily.[25] The Court, however, finds that Rule 23(b)(2) provides the most appropriate basis for certifying a class in this case.

Rule 23(b)(2) states that a class action is maintainable where:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). "Class action treatment is particularly useful in this situation because it will determine the propriety of the behavior of the party opposing the class in a single action." 7A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1775, at 447 (2d ed. 1986). As is apparent from the Rule's language, a class action is maintainable under subdivision (b)(2) only if two requirements are met: "(1) the opposing party's conduct or refusal to act must be 'generally applicable' to the class and (2) final injunctive or corresponding declaratory relief must be requested for the class." Id. § 1775, at 447–48.

These two requirements are satisfied under Count One of Plaintiffs' amended com-

---

**24.** Thus, the Court does not believe that its Rule 23(a) determination in this case runs afoul of the difficulties described by the Sixth Circuit in *In re American Medical Sys., Inc.*, 75 F.3d 1069 (6th Cir.1996). In that case, the Sixth Circuit set aside a district court's certification order, finding that the district court's cursory consideration of the requirements stated in Rule 23 represented a failure "to exercise properly [the court's] broad discretion *within* the framework of Rule 23." 75 F.3d at 1087. As Defendant points out, the Sixth Circuit found, among other shortcomings, that the court below had prematurely certified a class within three months after commencement of the action, in spite of the plaintiffs' vague allegations and conclusory statements that the elements of Rule 23(a) were satisfied, and in spite of the incomplete state of the record. In contrast, Plaintiffs' 26–page amended complaint in the instant matter is replete with detailed and specific factual allegations. Moreover, the parties have provided the Court with a fairly substantial evi-

dentiary record over the course of this two-year-old litigation, thus enabling the Court to probe behind the pleadings when necessary to properly evaluate Plaintiffs' class certification request.

**25.** Indeed, Defendant's opposition to Plaintiffs' motion focuses almost exclusively on the prerequisites of Rule 23(a). Defendant's extensive brief devotes only a single paragraph to Rule 23(b), arguing that the "predominance" requirement of Rule 23(b)(3) is not satisfied for the same reasons that the typicality and commonality requirements of Rule 23(a) are not satisfied. Given the Court's conclusion that subdivision (b)(2), rather than (b)(3), states the most appropriate basis for class certification, this argument need not be addressed. *See Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir.1993) (noting that the predominance inquiry called for under subdivision (b)(3) "has no place in determining whether a class should be certified under 23(b)(2)").

plaint. First, as discussed above, Plaintiffs' theory in support of Count One is that Defendant systematically promised lifetime medical benefits to all of its retirees throughout the ten-year period between 1979 and 1989. Regardless of whether Plaintiffs ultimately will be able to establish the facts necessary to sustain this theory, Plaintiffs certainly have alleged a course of conduct by Defendant that was "generally applicable" to the proposed class of retirees. Next, because Plaintiffs primarily seek a declaration that Defendant violated ERISA by ceasing to provide its retirees with lifetime medical benefits at company expense, the second requirement under subdivision (b)(2) is satisfied in this case.

As further support for this conclusion, the Court notes that subdivision (b)(2) frequently has been invoked by courts confronted with ERISA claims similar to that asserted by Plaintiffs in Count One. *See, e.g., Sprague,* 843 F.Supp. at 271; *Halford v. Goodyear Tire & Rubber Co.,* 161 F.R.D. 13, 20 (W.D.N.Y.1995). Accordingly, the Court concludes that the class proposed by Plaintiffs under Count One of their amended complaint qualifies for certification under Rule 23(b)(2).

■ Next, the Court finds that application of subdivision (b)(2) is not defeated by the claims asserted in Counts Two and Three of Plaintiffs' amended complaint. Although Plaintiffs seek monetary damages rather than injunctive or declaratory relief in those counts, this does not preclude application of

subdivision (b)(2) so long as the primary relief sought is declaratory. *See Forbush,* 994 F.2d at 1105 n. 3; *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 450–52 (N.D.Cal.1994). The Court views the claims asserted in Counts Two and Three as somewhat ancillary to the more fundamental claim asserted in Count One; should Plaintiffs prevail in their Count One claim, they might well be eligible for reimbursement of the entirety of the health insurance premiums imposed upon them, regardless of whether those premiums were excessive as alleged in support of Counts Two and Three. Thus, because the Court finds that Plaintiffs are primarily seeking a declaration that Defendant promised post-retirement medical benefits at company expense, the Court concludes that certification under Rule 23(b)(2) is appropriate notwithstanding Plaintiffs' claims for monetary damages.[26]

■ The Court is concerned, however, about the lack of an "opt out" opportunity if the class is certified under Rule 23(b)(2). Although Rule 23(c)(2) dictates that class members must be given notice and an opportunity to request exclusion from the class, this provision governs only class actions maintained under subdivision (b)(3), and thus would not apply here. *See* Fed.R.Civ.P. 23(c)(2); *see also Easter v. Jeep Corp.,* 750 F.2d 520, 523–24 (6th Cir.1984) (noting that failure to provide notice to members of a class certified under subdivision (b)(2) does not violate Rule 23). As discussed earlier, the Court is chiefly concerned that certain individual class members might have strong

---

**26.** Alternatively, the Court believes that certification under Rule 23(b)(1)(B) would also be appropriate. Application of subsection (b)(1)(B) has been found to be particularly appropriate where "class members have claims against a fund that may prove insufficient to satisfy all of them." 7A WRIGHT ET AL. § 1774, at 441. In this case, Plaintiffs argue that this subdivision is applicable in light of Defendant's apparently substantial financial difficulties. Because Defendant potentially would be subject to treble damages if Plaintiffs should prevail in their RICO claim, Plaintiffs contend that this case presents the sort of "limited fund" concern that Rule 23(b)(1)(B) is intended to address. *See County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1418 (E.D.N.Y.1989).

Moreover, in both Counts One and Three, Plaintiffs charge that Defendant breached its

duty under ERISA to serve the interests of Plan participants. Because this claim, if successful, will necessarily have an effect on the Plan's finances, and because the relief obtained pursuant to this claim necessarily will inure to the benefit of all Plan participants and beneficiaries, it follows that adjudication of Plaintiffs' ERISA claims will, in the language of Rule 23(b)(1)(B), "as a practical matter be dispositive of the interests of" all Plan participants and beneficiaries. *See Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.,* 140 F.R.D. 474, 478–79 (S.D.Ga.1991) (certifying a class action under Rule 23(b)(1)(B) based on an ERISA claim of breach of fiduciary duties). For these reasons, the Court finds that subdivision (b)(1)(B) of Rule 23 also provides an appropriate basis for certification of a class in this case.

claims under an estoppel theory, but that the class as a whole might not stand as good a chance to prevail under this theory. This could be the case, for example, where an employee retired under a SERP which only ambiguously referred to lifetime medical benefits, but where that employee relied on direct, express, and individualized assurances of such benefits from a high-ranking official in making the decision to retire under the SERP.

In light of this concern, the Court finds it appropriate to require that class members be notified and provided with an opportunity to opt out of the class. The Court's authority to impose such a requirement flows from the language of Rule 23 itself:

In the conduct of actions to which this rule applies, the court may make appropriate orders: ... (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action.

Fed.R.Civ.P. 23(d)(2); *see also Penson v. Terminal Transport Co.,* 634 F.2d 989, 994 (5th Cir.1981); *Arnold,* 158 F.R.D. at 464–65.

The Court recognizes that notice to absent class members and the right to opt out are not commonly required when classes are certified pursuant to Rule 23(b)(2), as these rights are typically reserved to 23(b)(3) classes. *See e.g., Holmes v. Continental Can Co.,* 706 F.2d 1144, 1145 (11th Cir.1983). However, a number of courts have exercised their discretion under Rule 23(d)(2) to grant 23(b)(2) class members the right to notice and the opportunity to opt out. *Penson,* 634 F.2d at 993 ("although a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class, a district court may mandate such a right pursuant to its discretionary power under Rule 23"); *see also, Holmes,* 706 F.2d at 1145 (finding the district court abused its discretion in refusing to provide an opt-out procedure); *Bauman v. U.S. Dist. Court,* 557 F.2d 650, 659–60 (9th Cir.1977) (declining to issue a writ of mandamus commanding the district court to modify its order granting class members notice and the opportunity to opt out); *Arnold,* 158 F.R.D. at 464–65 (permitting limited right to opt out of a Rule 23(b)(2) class). Under Rule 23(d)(2), a court may use this discretionary power when the court deems the circumstances appropriate. *See e.g., Id.* at 464.

This "appropriateness" determination often turns on the court resolving the conflict "between the policy of facilitating ... class actions and the need to protect the rights of absent class members." *See e.g., Holmes,* 706 F.2d at 1153. If a court imposes a notice and an opt-out procedure, this requirement could, in some cases, discourage suits because the procedure may be costly and time-consuming, thereby, eroding the substantive rights of the class. Rosen, *Title VII Classes and Due Process: To (b)(2) or Not to (b)(3),* 26 Wayne L.Rev. 919, 952 (1980). However, the danger is that while courts often show great deference to the class on substantive and policy issues, in cases which do not present pure 23(b)(2) issues, failure to provide notice and the right to opt out may deny many members of the class procedural fairness. *Id.*

In the instant case, the balance tips heavily in favor of notice and opt-out rights as, given the relatively limited universe of class members, the cost of this notice will not be especially high, and affording members an opportunity to opt out will not be overly burdensome to the parties.[27] In particular, the Court notes that Plaintiffs have already mailed a questionnaire to all potential class members; thus, the whereabouts of the class members are known, and the cost of a future mailing, like the cost of this past mailing, should be fairly modest. Moreover, from the responses to this questionnaire, Plaintiffs presumably have gained a better idea of the identities of the class members, as well as the approximate overall size of the class.

---

27. Indeed, the Court notes that, by Plaintiffs' own estimate, this class includes around 1,200 members; although this is certainly a large number, it is nonetheless feasible to provide notice and an opt-out opportunity to this closed group of retirees at relatively modest cost.

Underscoring the Court's discretionary power in this instance are due process concerns. In hybrid cases such as this matter which present both common issues of an injunctive nature and the potential for attendant monetary relief, there may be serious due process issues raised if a class certified under Rule 23(b)(2) is not given notice and the opportunity to opt out. These same due process concerns may also be present in a case in which a class is appropriately certifiable under Rule 23(b)(2) because of a common action or inaction by the defendant, but may also present issues in which individual class members may be able to make even stronger claims based on their own individual circumstances. In such a case, if the later type of individual is not given notice and the opportunity to opt out, the preclusive effect of an adverse judgment could potentially deprive these individuals of procedural due process. *See Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122, 1126–27 (5th Cir. 1969) (Godbold, J., specially concurring); *see also Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1326, 1337 (2nd Cir.1992). As Judge Godbold noted,

> ... an overbroad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process.... One act, or a few acts, at one or a few places, can be charged to be part of a practice or policy quickening an injunction against the employer at all places. It is tidy, convenient for the court fearing a flood of cases, and dandy for the employees if their champion wins. But what of the catastrophic consequences if the plaintiff loses and carries the class down with him, or proves only such limited facts that no practice or policy can be found, leaving him afloat but sinking the class? ...
>
> An additional risk is that of collusive suit at the indirect and undisclosed behest of the employer, giving him the possibility of a whitewash of system-wide employment practices by a judicial inquiry of narrow scope in a forum far distant from numerous employees who may never have heard of the litigation, or, if they have heard, not in such manner as to impel them to grasp hold of the problem and make decisions about it....

> The broad brush approach of some ... cases is in sharp contrast to the diligence with which in other areas we carefully protect those whose rights may be affected by litigation. If this were an individual cross-action against an employee at one of appellee's remote terminals we would turn intellectual handsprings over questions of notice and process to him and opportunity to protect his interests—such issues as whether the marshal dropped the notice at the door or handed it to the child at the front gate. But when the problem is multiplied many-fold, counsel, and at times the courts, are moving blithely ahead tacitly assuming all will be well for surely the plaintiff will win and manna will fall on all members of the class. It is not quite that easy.

*Id.*

When these considerations are balanced against the dangers of unfairness arising out of the preclusive effect of a potential adverse judgment, particularly in light of the Count I class-versus-individual estoppel claims the Court discussed earlier, the most prudent course here is to require that notice and the opportunity to opt out be provided to all members of both subclasses.

## IV. CONCLUSION

For the reasons stated above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' Motion for Class Action Certification be GRANTED. Accordingly, IT IS FURTHER ORDERED that:

(1) With respect to all three counts of Plaintiffs' Amended Complaint, the Court hereby certifies the following class pursuant to Rule 23(b)(2):

> All persons who as of October 31, 1989, were participants or beneficiaries of Defendant's medical plan for retired salaried employees, and whose status as such derives from a retirement occurring between January 1, 1979, and October 31, 1989.

(2) This class shall be divided into two subclasses: (1) those whose status as a participant or beneficiary derives from a retirement under one of the Special Early Retirement Programs offered by Defendant between 1982 and 1988, and (2) those whose status as a participant or beneficiary derives from a standard retirement. The

Court shall identify further subclasses as necessary where further developments so dictate.

(3) With respect to subclass (1) designated above, Plaintiffs Earl Fuller, John Gustke, Robert Rawlings, William Varney, Donald Armbruster, and Robert Butler shall serve as the named representatives. With respect to subclass (2) designated above, Plaintiffs Maynard Brandt and Harold Messacar shall serve as the named representatives. The Court shall designate further named representatives as necessary to protect the interests of the class or its subclasses.

(4) All members of the class shall be notified of this matter's certification as a class action, and shall be advised that they may request exclusion from the class. Counsel for the parties shall meet and confer within **30 days** of the date of entry of this Opinion and Order for the purpose of drafting a proposed notice consistent with this Opinion and Order, and the resulting proposed notice shall be provided to the Court within **60 days** of the date of entry of this Opinion and Order. Upon the Court's approval, this notice shall be distributed to all class members.

SO ORDERED.